# United States Court of Appeals for the Federal Circuit

VIDEOLABS, INC.,

*Appellant,*

— v. —

NETFLIX, INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00628*

## BRIEF FOR APPELLEE

MATTHEW FREIMUTH
DEVON EDWARDS
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
mfreimuth@willkie.com
dedwards@willkie.com

ALIZA GEORGE CARRANO
DANE SOWERS
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
(202) 303-1000
acarrano@willkie.com
dsowers@willkie.com

*Counsel for Appellee Netflix, Inc.*

APRIL 16, 2025



2.     A method of providing access to digital content for use on wireless communication devices, the method comprising:

receiving and storing in a server system a plurality of items of digital content to be made available for use in wireless communication devices used by a plurality of wireless services subscribers, including receiving and storing a plurality of different implementations of at least one of the items of digital content, where each implementation of any given item of digital content corresponds to a different set of device capabilities;

operating the server system to maintain a product catalog containing a description of the items of digital content, wherein the product catalog includes, in association with each item of digital content, a reference to each implementation of said item of digital content;

receiving a request from a wireless device used by one of the subscribers;

in response to the request, selecting a portion of the product catalog to be presented to the subscriber, based on device capabilities of the wireless device used by the subscriber; and

presenting the selected portion of the product catalog to the subscriber via a wireless network, such that the selected portion, as presented to the subscriber, provides only a single description of each item of digital content in said portion, regardless of the number of implementations of each said item.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25-1131 |
| **Short Case Caption** | VideoLabs, Inc. v. Netflix, Inc. |
| **Filing Party/Entity** | Netflix, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/16/2025

Signature:  /s/ Aliza George Carrano

Name:  Aliza George Carrano

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Netflix, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Indranil Mukerji, Willkie Farr & Gallagher LLP | Stephen A. Marshall, Willkie Farr & Gallagher LLP | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)     ☐ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ..................................................................1

STATEMENT OF THE ISSUES...................................................................2

INTRODUCTION ...........................................................................................3

STATEMENT OF THE CASE.......................................................................7

    A.    The '790 Patent ....................................................................7

    B.    Mehta.................................................................................14

    C.    Schläpfer...........................................................................19

    D.    The Proceedings Below.....................................................20

        1.    Netflix's Petition....................................................20

        2.    VideoLabs' Response .............................................22

        3.    Netflix's Reply.......................................................25

        4.    VideoLabs' Sur-Reply ...........................................30

        5.    The Board's Final Written Decision Found All
              Challenged Claims Unpatentable...........................31

            a.    The Board Found That Mehta Teaches "Receiving
                and Storing" "Different Implementations" of an
                "Item of Digital Content." .............................32

            b.    The Board Found That Mehta, Alone or in
                Combination with Schläpfer, Teaches Displaying
                Only a Single Description of an Item of Digital
                Content....................................................33

SUMMARY OF THE ARGUMENT ..............................................................35

STANDARD OF REVIEW ............................................................................39

ARGUMENT ..................................................................................................40

I.    THE BOARD CORRECTLY FOUND THAT MEHTA TEACHES BOTH "ITEMS OF DIGITAL CONTENT" AND "DIFFERENT IMPLEMENTATIONS" OF THOSE ITEMS. .............................................40

    A.    VideoLabs Improperly Seeks to Limit Claims Based on Preferred Embodiments. ........................................................42

    B.    VideoLabs' Arguments Regarding the "In Association With" Limitation Are Unavailing. .................................................46

    C.    When the Plain and Ordinary Meaning Is Properly Applied, Mehta Teaches the Claimed "Items of Content" and "Implementations," as the Board Correctly Determined. ...................48

    D.    If this Court Determines That a Different Claim Construction Is Warranted, Remand, Not Reversal, Is Appropriate. ...........................51

II.    THE BOARD CORRECTLY FOUND THAT MEHTA AND SCHLÄPFER DISCLOSE THE "SINGLE DESCRIPTION" LIMITATION. ...............................................................................52

    A.    VideoLabs' Claim Construction Arguments Are Inconsistent with the '790 Patent. ................................................53

    B.    The Board's Treatment of the "Single Description" Limitation Did Not Violate the APA or the Board's Regulations. .......................57

    C.    VideoLabs Fails to Overcome the Board's Finding That Mehta and Schläpfer Render the "Single Description" Limitation Obvious. ...............................................................................62

III.    VIDEOLABS DID NOT PRESERVE THE ARGUMENTS RAISED IN ITS OPENING BRIEF. ...........................................................65

    A.    VideoLabs' Substantive Arguments Regarding the "In Association With" and "Single Description" Limitations Are Forfeited. ...........................................................................66

    B.    VideoLabs' Procedural Challenge Regarding the "Single Description" Limitation Is Forfeited. ................................69

CONCLUSION ...................................................................70

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Apple Inc. v. Andrea Electronics Corp.*,
    949 F.3d 697 (Fed. Cir. 2020) .................................................................61, 62

*Apple Inc. v. Corephotonics, Ltd.*,
    81 F.4th 1353 (Fed. Cir. 2023) ..........................................................49

*Apple Inc. v. Gesture Tech. Partners, LLC*,
    129 F.4th 1367 (Fed. Cir. 2025) .........................................................64

*Bayer CropScience AG v. Dow AgroSciences LLC*,
    851 F.3d 1302 (Fed. Cir. 2017) ..........................................................59

*Bayer Schering Pharma AG v. Barr Lab'ys, Inc.*,
    575 F.3d 1341 (Fed. Cir. 2009) ..........................................................65

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004) ...................................................43, 54

*CAO Lighting, Inc. v. Feit Elec. Co., Inc.*,
    No. 2023-1906, 2024 WL 4503218 (Fed. Cir. Oct. 16, 2024) ...............42, 44, 54

*In re: Copaxone Consol. Cases*,
    906 F.3d 1013 (Fed. Cir. 2018) ..........................................................65

*Corephotonics, Ltd. v. Apple Inc.*,
    84 F.4th 990 (Fed. Cir. 2023) .......................................................40, 58, 59, 62

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
    881 F.3d 1354 (Fed. Cir. 2018) .........................................................39, 50, 56

*Gemtron Corp. v. Saint-Gobain Corp.*,
    572 F.3d 1371 (Fed. Cir. 2009) ........................................................69

*Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*,
    825 F.3d 1360 (Fed. Cir. 2016) ..........................................................61

*Google Inc. v. SimpleAir, Inc.*,
    682 F. App'x 900 (Fed. Cir. 2017) .....................................................66

*In re Google Tech. Holdings LLC*,
    980 F.3d 858 (Fed. Cir. 2020) ....................................................................68, 69

*Imaginal Systematic, LLC v. Leggett & Platt, Inc.*,
    805 F.3d 1102 (Fed. Cir. 2015) ..................................................................42, 54

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
    977 F.3d 1212 (Fed. Cir. 2020) ..........................................................................39

*IOENGINE, LLC v. Ingenico Inc.*,
    100 F.4th 1395 (Fed. Cir. 2024) ........................................................................66

*Kaken Pharm. Co. v. Iancu*,
    952 F.3d 1346 (Fed. Cir. 2020) ..........................................................................51

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
    780 F.3d 1376 (Fed. Cir. 2015) ..........................................................................39

*King Pharms., Inc. v. Eon Labs, Inc.*,
    616 F.3d 1267 (Fed. Cir. 2010) ..................................................................54, 57

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) ....................................................................................35, 63

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
    678 F.3d 1280 (Fed. Cir. 2012) ..........................................................................55

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
    587 F.3d 1324 (Fed. Cir. 2009) ..................................................................64, 65

*Rembrandt Diagnostics, LP v. Alere, Inc.*,
    76 F.4th 1376 (Fed. Cir. 2023) ..........................................................................62

*Rhine v. Casio, Inc.*,
    183 F.3d 1342 (Fed. Cir. 1999) ..........................................................................53

*Schering Corp. v. Geneva Pharms.*,
    339 F.3d 1373 (Fed. Cir. 2003) ..........................................................................55

*Starhome GmbH v. AT&T Mobility LLC*,
    743 F.3d 849 (Fed. Cir. 2014) ............................................................................45

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*,
    806 F.3d 1356 (Fed. Cir. 2015) ...........................................................52

*Supercell Oy v. GREE, Inc.*,
    No. 2020-2005, 2021 WL 4452082 (Fed. Cir. Sept. 29, 2021).............58, 68, 69

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
    8 F.4th 1349 (Fed. Cir. 2021) .............................................39, 50, 56

*Thorner v. Sony Computer Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ...........................................................45

*Thryv, Inc v. Click-To-Call Techs., LP*,
    590 U.S. 45 (2020)...........................................................................70

*Titanium Metals Corp. of Am. v. Banner*,
    778 F.2d 775 (Fed. Cir. 1985) .............................................................54

*TQ Delta, LLC v. DISH Network LLC*,
    929 F.3d 1350 (Fed. Cir. 2019) .........................................39, 50, 56

*Uber Techs., Inc. v. X One, Inc.*,
    957 F.3d 1334 (Fed. Cir. 2020) ...........................................................65

*Unigene Labs., Inc. v. Apotex, Inc.*,
    655 F.3d 1352 (Fed. Cir. 2011) ...........................................................64

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) .......................................................42, 54

## STATEMENT OF RELATED CASES

No appeal from the proceedings below was previously before this or any other appellate court.

U.S. Patent No. 7,233,790 ("the '790 patent"), the subject of the IPR proceeding below and this appeal, is also currently at issue in *Starz Entertainment, LLC v. VL Collective IP, LLC*, No. 1:21-cv-01448-JLH (D. Del.); and *VideoLabs, Inc. v. Netflix Inc.*, No. 1:22-cv-00229-JHS (D. Del.).

## STATEMENT OF THE ISSUES

1.  Whether the Board correctly found that Mehta teaches the "items of content" and "implementations" limitations of the '790 patent claims.

2.  Whether the Board properly found that Mehta teaches the "single description" limitation of the '790 patent claims.

3.  Whether the Board acted in accordance with law in considering Netflix's arguments regarding how Figures 2 and 11F of Mehta disclose the "single description" limitation of the claims.

4.  Whether the Board properly found that Mehta and Schläpfer render obvious the "single description" limitation of the '790 patent claims.

5.  Whether VideoLabs has preserved any of the issues raised in its opening brief for appellate review.

## INTRODUCTION

This Court should affirm the Board's Final Written Decision finding that all claims of VideoLabs' U.S. Patent No. 7,233,790 ("the '790 patent") are anticipated and/or obvious. As Netflix explained below, there was nothing novel or inventive about the methods for provisioning content in the '790 patent: Mehta, a prior art patent publication, teaches an analogous system that likewise stores different versions of various computer applications, resources, and content, and can present to a user the versions that are compatible with the user's device. Applying the plain and ordinary meaning of the claim terms (as both Netflix and VideoLabs agreed it should), the Board correctly held that Mehta anticipates claims 1-4 and 8-11 of the '790 patent—and that Mehta in combination with another reference, Schläpfer, renders obvious claims 1-14.

VideoLabs' appeal focuses on just two limitations; it contends that the Board erred in finding that Mehta's "implementations" (*i.e.*, different versions of an application) are stored "in association with each item of digital content," and that Mehta "provides only a single description of each item of digital content … regardless of the number of compatible implementations." *See generally* Blue Br. But, in doing so, VideoLabs attempts to rewrite the '790 patent claims, improperly adding new limitations, and then arguing that Mehta failed to satisfy them. The

Board correctly rejected VideoLabs' attempts to import limitations from the specification, and that determination should be affirmed.

***First***, VideoLabs contends that the Board refused to import the "hierarchical item-implementation relationship" depicted in the Figure 5 embodiment of the '790 patent into the claims.[1] Blue Br. 2. This argument fails as a matter of law. As an initial matter, VideoLabs agreed below that no claim construction was necessary. Moreover, this Court's guidance is clear: exemplary embodiments—even if they are the ***only*** disclosed embodiments—cannot narrow a claim unless the specification makes that intent explicit. Here, the '790 patent explains that "any particular product entry in the catalog 54 ***can*** include references to multiple implementations of the product." Appx81(9:49-51) (emphasis added). The '790 patent also expressly teaches that its "exemplary embodiments" are "illustrative" and not "restrictive." Appx84(15:11-18). Accordingly, there is no express requirement in the specification that the '790 patent's claims are limited to the Figure 5 embodiment. The Board correctly determined that the plain and ordinary meanings of the claim terms were not limited to include only those systems that implement the "hierarchical item-implementation relationship" depicted in the '790 patent; under

---

[1] At various points below, the parties also referred to Figure 6 of the '790 patent, which depicts the same hierarchical relationship between a "product entry 56" and "implementation entries 57." *See* Appx68; Appx1994.

that interpretation, there is no dispute that Mehta discloses the requisite claimed "items of digital content" and "different implementations."

In an attempt to relitigate this limitation, VideoLabs raises for the first time in its opening brief that the Board's refusal to import a hierarchical relationship "left an entire limitation ('in association with each item of digital content') on the cutting room floor." Blue Br. 2-3. Not once did VideoLabs contend at the Board that the effect of not limiting the claims to require the hierarchical relationship would render parts of another claim limitation superfluous. Notwithstanding its belatedness, VideoLabs' new argument fails on the merits; there are other ways to associate "items of digital content" and "implementations" than storing them in a hierarchical structure, as the Board correctly found.

Second, with respect to the requirement that the system provide "only a single description" of the "item of digital content," VideoLabs contends that the claimed "product catalog" must store "multiple compatible implementations of the same item." Blue Br. 6. This argument is baseless. The '790 patent's claims only require "a plurality of different implementations," each corresponding to a "different set of device capabilities," not multiple compatible "implementations" for a particular device. Appx84(15:35-61). The specification further refutes VideoLabs' position, explaining that "items of digital content" are shown to the user if they have "***at least one*** implementation compatible with the subscriber's device." Appx81(9:51-56).

This is simply VideoLabs improperly importing an additional limitation into claims. VideoLabs does not and cannot dispute that Mehta teaches embodiments where an application can have one compatible "implementation" with a particular device, and displays "only a single description" of that one compatible "implementation." This disclosure in Mehta suffices for anticipation.

VideoLabs' remaining arguments on this limitation are unavailing. VideoLabs claims that the Board considered supposedly "new" evidence Netflix submitted in Reply to reinforce how Mehta discloses the "only a single description" limitation. Not true. Moreover, VideoLabs never moved to exclude or otherwise challenge the timeliness of that evidence below, and instead responded to Netflix's analysis in its Sur-Reply. For similar reasons, VideoLabs further asserts that the Board should have "den[ied] the petition" because it did not sufficiently address this limitation.[2] Blue Br. 3. But that institution decision is expressly insulated from appellate review.

Apart from Mehta's teachings, VideoLabs also ignores the Board's finding that the combined teachings of Mehta and Schläpfer render obvious the "single description" limitation: even VideoLabs could not identify more than two other ways to solve the problem of displaying information about available applications on a

---

[2] Tellingly, VideoLabs' Patent Owner Preliminary Response did not address the "only a single description" limitation in any respect. *See generally* Appx1310-1323.

device's small screen.  Under the black letter law, that is more than enough to establish obviousness.

In short, the Board's well-reasoned Final Written Decision addressed and correctly refuted each of VideoLabs' arguments below.  VideoLabs cannot prevail by ignoring precedent or advancing new arguments on appeal.  This Court should affirm that all claims of the '790 patent are unpatentable.

## STATEMENT OF THE CASE

### A. The '790 Patent

The '790 patent is generally directed to provisioning digital content for wireless communication devices, such as cell phones.  *See* Appx61, Abstract; Appx77(1:22-39, 2:50-59).  Specifically, the '790 patent discloses a "download manager," which hosts "items of digital content" that content providers can upload for users to download to their mobile devices.  Appx78(4:9-25); Appx65.  At least one "item of digital content" in the download manager has "different implementations" (or different versions of the content), each of which is compatible with different types of devices.  *See, e.g.*, Appx84(16:13-35).  Ultimately, the '790 patent describes a system for provisioning "items of digital content" where at least one "item of digital content" has "different implementations," and only an "implementation" compatible with a user's device is presented for download.

Importantly, the inventors of the '790 patent were not operating on a blank slate. It was well-known in the art "that users' wireless (and wired) devices had different sets of capabilities." Appx194 ¶ 36 (citing Appx325-326, [0059]; Appx327, [0064]; Appx328, [0067]; Appx331, [0085]; Appx1071(1:58-67, 2:23-32); Appx1075(9:1-11); Appx1108(12:4-12); Appx1129-1130, [0009], [0012]; Appx1131, [0032]; Appx1132, [0038]; Appx1134, [0046]; Appx1144, [0059], [0064]; Appx1283; Appx1288; Appx1290-1292). Accordingly, various techniques for provisioning content to these devices were known in the art prior to the '790 patent. Appx191-192 ¶ 33 (citing Appx1071-1072(2:64-3:8); Appx1103(2:7-8, 2:47-51); Appx1155, [0008]). Before the '790 patent was filed, those in the field had "recognized that an integrated content provisioning system was needed to provide appropriate digital content corresponding to the capabilities of the user's wireless device." Appx191-192 ¶ 33 (citing Appx323, [0005], [0007]; Appx325-326, [0059]; Appx331, [0085]; Appx337-338, [0131]; Appx1071-1072(2:23-32, 2:64-3:8); Appx1074(8:13-19); Appx1130, [0012]; Appx1138, Abstract; Appx1282-1283).

The '790 patent purports to address, via its download manager, a problem that arose as mobile devices became more common in the early 2000s: "different mobile devices often require[d] different content packaging formats and provisioning protocols." Appx77(1:62-63). The specification discloses its purported solution to

this problem: creating a system that would "efficiently allow many digital content providers to distribute many different types of digital content to Subscribers using many different types of mobile devices."  Appx77(2:13-17).

One embodiment of the '790 patent's download manager is shown in Figure 3, reproduced below.  As illustrated in the figures, the system includes a download manager 1, an intermediary between content stored within the system, and multiple clients, with different device capabilities, seeking to access the content. Appx78(4:11-15); Appx63.



Appx65. The download manager 1 includes a database 35 of published content. Appx79(6:46-52). The '790 patent explains that "content" refers to items including "software and/or data embodying things such as games and other applications, applets or the like; images; screensavers; wallpaper; [and] ring tones." Appx78(3:50-53). As noted, an "item of digital content" may have one or more "implementations." An "implementation … can be simply a binary file … representing the product," or it can be "two or more binaries." Appx81(9:40-43).

According to the '790 patent, content suppliers frequently needed to create multiple versions, or "implementations," of an application for that application to be compatible with different types of devices. Appx77(1:60-2:1). For example, the '790 patent discloses that, as of its filing, an application being delivered to both "Nokia-COD phones and Sprint-GCD OTA phones" would need to be "custom-packaged for each of those two delivery modes." Appx77(2:1-4). Thus, the content suppliers would need to create two packages (*i.e.*, "implementations") of the same application (*i.e.*, the "item of digital content"). *See* Appx77(2:1-4).

The experts below discussed an example of what would be an "item of digital content" and "different implementations" as claimed in the '790 patent: the application "Microsoft Word" is an "item of digital content" available for various operating systems, including Windows and Mac. Appx2072 ¶ 70. Both experts agreed that "Microsoft Word for Windows" and "Microsoft Word for Mac"

are thus two "implementations" of the same "item of content."  Appx2072 ¶ 70; Appx2331(43:14-24); Appx22.  The '790 patent purports to provide a solution for managing these various "implementations" "for all of the devices in the marketplace."  Appx77(2:4-17).  For example, the '790 patent discloses that when a client device sends a request for content, its system responds by determining which "implementations" listed within catalog 54 are supported by the client device based on that device's capabilities.  Appx82(12:9-13).

The '790 patent explains how "items of digital content" are listed in its system. The product catalog 54 contains descriptions of the "items of digital content," *i.e.*, "the products."  Appx81(9:37-38).  The embodiment in Figure 5 of the '790 patent, reproduced below, depicts "for each product entry 56, a reference 58 to at least one implementation 57 of that product."  Appx81(9:38-40).  A "particular product entry in the catalog 54 *can* include references to multiple implementations of the product," but there is no disclosure in the '790 patent that requires all "implementations" of an "item of digital content" be referenced to one corresponding product entry. Appx81(9:49-51) (emphasis added).  Figure 5 merely illustrates an exemplary embodiment that employs a hierarchical data structure whereby an "item of digital content" is identified as a single product entry in a database that links each "implementation" of that "item of digital content" to the corresponding product entry.  Appx81(9:37-62).



FIG. 5

Appx67. Indeed, the '790 patent confirms that the described embodiments, including what is shown in Figure 5, is only illustrative and not mandatory: "[a]lthough the present invention has been described with reference to specific exemplary embodiments, it will be recognized that the invention is not limited to the embodiments described … the specification and drawings are to be regarded in an illustrative sense rather than a restrictive sense." Appx84(15:11-18). Accordingly, the claims do not mandate that the claimed "product catalog" utilize the hierarchical structure as illustrated in Figure 5. *See, e.g.*, Appx84(15:35-61). Instead, the claims only require that the "product catalog" associate "each item of digital content" with "a reference to each implementation of said item of digital content." Appx84(15:35-61).

Claim 2 of the '790 patent is representative for purposes of this appeal,[3] and recites as follows, with the relevant limitations emphasized below:

2. A method of providing access to digital content for use on wireless communication devices, the method comprising:

receiving and storing in a server system a plurality of items of digital content to be made available for use in wireless communication devices used by a plurality of wireless services subscribers, including receiving and storing ***a plurality of different implementations of at least one of the items of digital content***, where each implementation of any given item of digital content corresponds to a different set of device capabilities;

operating the server system to maintain a product catalog containing a description of the items of digital content, wherein the product catalog includes, ***in association with each item of digital content, a reference to each implementation of said item of digital content***;

receiving a request from a wireless device used by one of the subscribers;

in response to the request, selecting a portion of the product catalog to be presented to the subscriber, based on device capabilities of the wireless device used by the subscriber; and

presenting the selected portion of the product catalog to the subscriber via a wireless network, such that the selected portion, as presented to the subscriber, ***provides only a single description of each item of digital content in said portion, regardless of the number of implementations of each said item***.

Appx84(15:35-61) (emphasis added).[4]

_____

[3] VideoLabs agrees that claim 2 is representative. Blue Br. 11-12.

[4] After the Petition was filed, a reexamination certificate was issued for the '790 patent, which resulted in amendments to claims 1 and 8. Appx1841-1843. Following reexamination, the Board observed that the patentability of amended

13

**B.      Mehta**

Mehta (U.S. Patent Pub. No. 2002/0131404) was published on September 19, 2002, and was filed on November 28, 2001. *See generally* Appx264-344. VideoLabs does not dispute that Mehta is prior art to the '790 patent.

Like the '790 patent, Mehta is directed towards methods and systems for maintaining and provisioning wireless applications to wireless devices. Appx323, [0005]; Appx325-326, [0059]; Appx264, Abstract. Specifically, Mehta teaches a Mobile Application System ("MAS") that similarly maintains and distributes wireless applications and other content to different devices over a wireless network based on the capabilities of those devices. Appx325-326, [0059]-[0060]. Figure 1 of Mehta (reproduced below) depicts a block diagram that illustrates how subscribers of wireless services (*e.g.*, subscriber devices 101 and 101b) request and download software applications from the MAS 105:

---

claims 1 and 8 could be adjudicated without "new analysis or citations to the prior art that were not included in the Petition." Appx2414. Accordingly, the Board's decision addresses the claims as amended during reexamination. Appx37. VideoLabs' does not challenge the applicability of the Board's decision to the amended claims.



*Fig. 1*

Appx265.

Mehta's MAS stores an "application profile" for each application, which includes various details such as the title, version, description, publisher, and a URL of the application's binary file. Appx333, [0099]; Appx276. Figure 9D of Mehta, reproduced below, depicts an exemplary application profile for an application called "Kbrowser."



Appx276.

As Mehta explains, when a user seeks to download a particular application, the MAS "determines the type and capabilities of the subscriber device from which the request was made and determines whether the device capabilities are sufficient to support a specific application." Appx331, [0085]. In other words, based on the user's request, the MAS determines an initial list of applications and subsequently "filters this initial list based upon subscriber and device capabilities." Appx328, [0067].

After the MAS completes this filtering, the user is presented with a list of compatible applications; Mehta expressly discloses embodiments where "the MAS only lists those applications that are supported by the subscriber's device." Appx336, [0117]. Consistent with that disclosure, Mehta presents a single description for each application as options for download, as depicted, for example in Figures 2 and 11F.





*Fig. 11F*

Appx266; Appx301. Mehta specifically explains that the application profile allows

the MAS to maintain a catalog of different versions of the same "item of digital

content," each configured for a particular set of device capabilities—or, in Mehta's

words, "functionally equivalent programs having the same name that are capable of

running on multiple kinds of devices." Appx333, [0098]. For example, the versions

of "Microsoft Word" for Mac and for Windows are "functionally equivalent

programs having the same name," and they are also "different implementations for

the same product." *See* Appx333, [0098]; Appx2331(43:14-24); Appx2335(47:15-

22); Appx2336(48:5-11). Both experts agree that Mehta's MAS would allow those

two versions of Microsoft Word to be submitted and stored in MAS's repository. Appx2331(43:14-24); Appx2335(47:15-22); Appx2336(48:5-11); Appx218-219 ¶ 66. Each "implementation" of Microsoft Word stored in Mehta's MAS has its own application profile. *See* Appx333, [0099]; Appx276. Each application profile includes the title of the "item of digital content" and a URL that provides a "reference to" the "implementation." Appx333, [0099]; Appx276.

Continuing with the Microsoft Word example, the MAS would include an application profile with the title "Microsoft Word" and a URL that identifies the filename and location of the Mac version of Microsoft Word. Appx2731(48:8-24). A second application profile would also have the title "Microsoft Word" and a different URL that identifies the filename and location of the Windows version. Appx2731(48:8-24). Their shared name in the title of the application profiles links those two versions of Microsoft Word as the same "item of digital content." Appx2731(48:8-24); *see also* Appx333, [0098]; Appx276.

## C.    Schläpfer

Schläpfer is a white paper that is dated July 2001; VideoLabs does not dispute on appeal that Schläpfer is prior art to the '790 patent. *See generally* Appx1041-1066.

Schläpfer discusses Java technology for mobile devices and mobile device applications, particularly Java 2 Micro Edition ("J2ME"); a platform for "[s]ervice

providers who wish to deliver content to their customers over resource-constrained devices." Appx1044. Schläpfer teaches how to develop Java applications and provision those applications to mobile devices using J2ME. *See generally* Appx1041-1066. Schläpfer further teaches that mobile devices using J2ME "have a small display … and are capable of communicating via a mobile network with limited bandwidth." Appx1047.

### D. The Proceedings Below

#### 1. Netflix's Petition

Netflix asserted two grounds of unpatentability: that claims 1-4 and 8-11 were anticipated by Mehta (Ground 1), and that claims 1-14 were obvious over Mehta and Schläpfer (Ground 2). Appx114. Further, "no claim terms require specific construction to resolve the unpatentability issues presented" by the Petition. Netflix maintains that position on appeal. Appx115.

Netflix explained how Mehta disclosed each limitation of representative Claim 2. For instance, Netflix demonstrated how Mehta teaches "a plurality of different implementations of at least one of the items of digital content." Appx120-121; *see also* Appx217-219 ¶¶ 65-66. Mehta teaches, and Netflix's expert Mr. Wechselberger confirmed, Mehta's "MAS receives, stores and supports functionally equivalent programs capable of running on multiple kinds of devices." Appx121; Appx218-219 ¶ 66. Netflix also explained that the claimed "a reference to each

implementation of said item of [digital] content" that must be "in association with" each "item of digital content" is the "URL" or "other location reference" stored in Mehta's application profiles. Appx122-123 (citing Appx327, [0064]; Appx333, [0097]; Appx220-221 ¶ 68).

Further, in Mehta, "[t]he device capability is also examined [by the MAS] to determine whether the requested application can be run satisfactorily on the subscriber device." Appx121 (citing Appx218-219 ¶ 66). Netflix established that Mehta's "MAS provides the subscriber with only a portion of the list of applications, corresponding to the versions that will work for the subscriber and regardless of the number of application versions, so that the subscriber can avoid the problem of having to explicitly select a compatible application." Appx128-129 (citing, *inter alia*, Appx227 ¶ 77). Accordingly, as Mr. Wechselberger explained, Mehta's MAS displays a "single description" for each "item of digital content" because it will display the description for the version that is compatible with the subscriber's device. Appx227 ¶ 77.

With respect to Ground 2, Netflix explained that the "single description" limitation would have been obvious in view of Mehta and Schläpfer. Appx142-144. Mr. Wechselberger further explained, "it was well known to a POSITA at the time of the alleged invention that the available screen space, signal processing and memory capabilities of mobile devices were limited, and that implementations and

utility of devices within wireless infrastructures had to be constrained accordingly." Appx241-242 ¶ 106. In addition, a "POSITA would have understood that displaying a plurality of different viewing capabilities (*e.g.*, languages) to a user and expecting the user to select which was appropriate for the user's device would likely be very confusing." Appx242 ¶ 107. Thus, a POSITA would have combined Mehta's provisioning system with Schläpfer's teachings about small screen size to display "only a single description" of each "item of digital content" to the user. Appx142-144; Appx243 ¶ 108.

## 2. VideoLabs' Response

VideoLabs disputed whether Mehta discloses "a plurality of different implementations of at least one of the items of digital content" and "provides only a single description of each item of digital content," among several other challenges it does not raise now. Appx1976-2033. VideoLabs agreed with Netflix, however, that "no express construction of any [claim] term is required," and that "the plain and ordinary meaning of the claim terms" applies. Appx1990-1991.

VideoLabs primarily contended that Mehta does not disclose the claimed "items of digital content" and "implementations" limitations, because, according to VideoLabs, in Mehta's MAS "each application is its own file and is not made up of other subsidiary files (like the implementations are in the '790 patent)." Appx1998. VideoLabs relied exclusively on Figure 6 of the '790 patent (reproduced below) to

assert that "the items of content (called a 'product' in figure 6) and the implementations are separate concepts."  Appx1994.



FIG. 6

Appx1994 (annotating Appx68).

To explain its understanding of "items of digital content" and "implementations," VideoLabs' expert, Dr. Goodrich, introduced the "Microsoft Word" example.  Appx2054-2055 ¶ 39 ("Microsoft Word is another piece of content, while the versions of Microsoft Word for Windows and Microsoft Word for Apple Macs are different implementations.").  But VideoLabs argued that Mehta's support for "functionally equivalent programs having the same name" was inapplicable because that disclosure supposedly referred to "multiple different applications (pieces of content)" as opposed to "a single application that has 'functionally equivalent' versions."  Appx2002.  More specifically, VideoLabs argued that "'functionally equivalent' applications are merely those that accomplish

the same function—they are not different versions of the same application." Appx2002.

Importantly, although VideoLabs raised several challenges to the Petition's arguments regarding "implementations" and "items of digital content," it never argued that the scope of "in association with each item of digital content, a reference to each implementation of said item of digital content" was limited to the hierarchical relationship depicted in Figures 5 and 6 of the '790 patent, as it does now in this appeal. *See generally* Appx1976-2003; Appx2420-2451. Instead, VideoLabs asserted that Mehta's MAS does not disclose "implementations" at all. Appx2005 ("Any 'references' Mehta discloses are to the 'applications'—the 'items of digital content'—not to the implementations."). VideoLabs contended that "Mehta's 'URL' or 'other location reference' language only refers to how the application is submitted to the MAS—it does not show that the 'URL' or 'other location reference' is included in the 'product catalog,' as required by the claims." Appx2006. That is, VideoLabs challenged only whether Mehta teaches the second half of this limitation, contending that Mehta "fails to disclose a product catalog including, in association with each item of content, *a reference to each implementation*." Appx2005 (emphasis in original).

VideoLabs also argued that Mehta does not disclose "provid[ing] only a single description of each item of digital content … regardless of the number of

24

implementations" because, in Mehta's MAS, "the item of digital content can never have more than one implementation."  Appx2009-2011.  Based on its flawed understanding that "functionally equivalent programs" can only be two different programs having the same function, VideoLabs asserted that even if Mehta's "'functionally' equivalent' applications are different implementations," Mehta still does not disclose "a single description" because MAS would show both compatible programs to a user.  Appx2011-2012.

Finally, VideoLabs argued that the combination of Mehta and Schläpfer does not render the limitation obvious.  Principally, VideoLabs argued that "[e]ven if a POSITA were motivated to limit the amount of content shown due to 'a small display,' there are many ways to accomplish that" beyond providing just a "single description" of each "implementation"—though it provided no specific examples. Appx2019-2020.

### 3.    Netflix's Reply

Netflix responded to VideoLabs' criticisms, explaining how Mehta's MAS receives and stores both "items of digital content" and "different implementations" associated with those "items of digital content."  For example, with respect to Figure 9D of Mehta (reproduced below), Netflix explained that "Kbrowser" (in red) was the "item of digital content" and that the URL stored in the application profile (in green) represented one "implementation" of Kbrowser.  Appx2261-2262.



*Fig. 9D*

Appx2262 (annotating Appx276).

Netflix also explained how Mehta's disclosure of "functionally equivalent programs having the same name that are capable of running on multiple kinds of devices" teaches the claimed "plurality of different implementations." As Netflix pointed out, even VideoLabs' expert, Dr. Goodrich, admitted at deposition that Microsoft Word for Windows and Mac were "functionally equivalent programs" and "different implementations for the same product." Appx2264-2266 (quoting Appx2331(43:14-24)). Dr. Goodrich agreed that Mehta could disambiguate between the two different versions of software and that both versions could be stored

in MAS's repository. Appx2331(43:14-24); Appx2335(47:15-22); Appx2336(48:5-11).

After realizing his testimony proved Netflix's position, Dr. Goodrich changed course to opine that the two different versions of Microsoft Word "'would not be considered different implementations of the same product' but would instead be 'different applications'" in Mehta. Appx2266 (quoting Appx2336(48:12-16)). Dr. Goodrich opined that Mehta would store the "implementations" in a "flat database" as opposed to the 2-layer hierarchical database as depicted in Figures 5 and 6 of the '790 patent. Appx2336(48:11-20). He concluded a flat database would not fall within the scope of the claims. *See* Appx2336(48:11-20).

Netflix responded that Dr. Goodrich's latter opinion was nothing more than an attempt to improperly narrow the scope of the claims when "there is no limitation requiring storage in a multi-level database or data structure." Appx2266. Indeed, the "'790 patent's claims recite 'items of digital content' not a "product entry,'" which is a term only used in the '790 patent's specification to describe part of the data structure depicted in its exemplary embodiment; thus, the claims are not limited to a 2-layer hierarchy. Appx2266. Moreover, the fact that the '790 patent's specification discloses that an "implementation 57 can be simply a binary file (a 'binary') representing the product," Appx2266 (citing Appx81(9:40-42)), further supports that the claims are not so limited. Accordingly, Netflix explained that

Mehta anticipates this limitation because "the URL *associated with* the item of content is stored in the application profile, which is then stored in the data repository." Appx2268 (emphasis added).

With respect to the "single description" limitation, Netflix further expounded on the foundation it laid in the Petition to demonstrate that Mehta anticipates this limitation. Specifically, Figure 11F in Mehta (reproduced below), which is identified in paragraph [0117] of Mehta and was cited in the Petition to support Netflix's analysis of this claim term, illustrates that Mehta displays "only a single description" for each "item of digital content." Appx2269-2272.



*Fig. 11F*

Appx2271 (annotating Appx301).

Then, in response to Dr. Goodrich's opinion that "Fig. 2 … illustrates a mobile device that can operate MAS," Appx2058-2059 ¶ 45, Netflix concurred that Figure 2 of Mehta does "depict[] how the list of applications could look on a subscriber's device, *i.e.*, there is only a single description identifying each game." Appx2269-2272; *see also* Appx266; Appx301.



### 4. VideoLabs' Sur-Reply

VideoLabs acknowledged in its sur-reply Netflix's argument that Figure 9D of Mehta depicts "the 'item of digital content' is 'Kbrowser,' the 'implementation' is in the .jar file, and *the URL, which is associated with this implementation of 'Kbrowser,'* is the 'reference to each implementation of said item of digital content.'" Appx2433 (emphasis added). But not once in its sur-reply did VideoLabs dispute that the claims did not require storing a hierarchical relationship between "items of digital content" and their "implementations." Nor did VideoLabs assert that such an interpretation would render the "in association with each item of digital content" language superfluous, as it now argues in its appeal brief.

Regarding the "single description" limitation, notably, VideoLabs did not challenge the propriety or timeliness of Netflix's invocations of Figures 2 and 11F

of Mehta. Instead, it asserted in a footnote that the claims require display of a single description for "an application with multiple implementations." Appx2434-2435 & n.5. There was no mention of a scenario where there were multiple compatible "implementations."

Additionally, with respect to the combination of Mehta and Schläpfer, VideoLabs attempted to identify additional solutions to the problem of limited screen size beyond providing "only a single description" of an "item of digital content," but could point to only two: "the MAS could display less information, or only display the most important or valuable applications." Appx2443-2444.

### 5. The Board's Final Written Decision Found All Challenged Claims Unpatentable.

The Board found for Netflix on all disputed issues. *See generally* Appx1-59. VideoLabs does not challenge the majority of those findings on appeal—conceding that Mehta discloses, *inter alia*, "receiving and storing a plurality of items of content," "a plurality of different implementations," "a product catalog containing a description of the items of content," "including a reference to each implementation" and "selecting an implementation." VideoLabs further concedes that Schläpfer is prior art to the '790 patent, that a POSITA would have been motivated to combine Mehta and Schläpfer, and that Mehta and Schläpfer render obvious the "provisioning models" and "provisioning attributes and descriptors" limitations of the dependent claims.

31

### a. The Board Found That Mehta Teaches "Receiving and Storing" "Different Implementations" of an "Item of Digital Content."

Important for this appeal, the Board found that Mehta disclosed "receiving and storing a plurality of different implementations of at least one of the items of digital content." Appx17-22. Its analysis focused largely on the hypothetical example involving the "item of digital content" "Microsoft Word"—specifically, "whether Microsoft Word for Windows and Microsoft Word for Apple Mac are different implementations of the same application or are different applications." Appx18.

As to that question, the Board observed that "Dr. Goodrich changed his unambiguous position from both his declaration and his earlier deposition testimony" in what "appear[ed] to be an attempt to cure Patent Owner's and Dr. Goodrich's incomplete analysis of Mehta's disclosure." Appx18; Appx20. The Board also found that "the subsequent inconsistent deposition testimony of Dr. Goodrich, namely, that Microsoft Word for Windows and Microsoft Word for Apple Macs are not different implementations" represented "an attempt to narrow the scope of the claimed 'different implementations' by improperly reading an example from the Specification into the claims." Appx20-21. Ultimately, the Board "d[id] not credit the deposition testimony of Dr. Goodrich that Microsoft Word for Windows and Microsoft Word for Apple Mac are different applications," and found "that

Mehta's disclosure of receiving and storing functionally equivalent programs having the same name that are capable of running on multiple kinds of devices," met this claim limitation. Appx22.

The Board also rejected VideoLabs' argument that the claims require "storing the implementations in a multi-level data structure," as disclosed in Figures 5 and 6 of the '790 patent. Appx21-22. The Board recognized that "[a]lthough Figures 5 and 6 of the Specification show an example of arranging implementations in a 2-layer hierarchy," there was no basis to "read this example into the claims." Appx21. Instead, the Board explained, the claims were broad enough to encompass "storing the 'implementations' [as] in Mehta's 'flat database.'" Appx21 (quoting Appx2336(48:12-20)). Further, the Board found that Mehta's "data repository 511 which stores application profiles, where each application profile includes a URL for an application as shown in Figure 9D," satisfied the limitation "wherein the product catalog includes, in association with each item of digital content, a reference to each implementation of said item of digital content." Appx26; *see also* Appx21-25.

> **b. The Board Found That Mehta, Alone or in Combination with Schläpfer, Teaches Displaying Only a Single Description of an Item of Digital Content.**

The Board also held that Mehta discloses "provid[ing] only a single description of each item of digital content," as claimed in the '790 patent. Appx28-31. The Board first determined that Mehta's "functionally equivalent programs

having the same name that are capable of running on multiple kinds of devices means that each program corresponds to a different device having different capabilities." Appx29. Agreeing with Netflix, the Board reasoned that "even though multiple implementations can have the same name, Mehta displays the name only once, regardless of the number of implementations that have the same name." Appx30 (citing Appx128-130; Appx2269-2272). The Board rejected VideoLabs' argument that Mehta was "silent" as to whether only a single description would be displayed. Appx29-30. Relying on Mr. Wechselberger's declaration, the Board found that "when multiple implementations have the same name, each implementation corresponds to a different device, and therefore, the MAS would only present to the subscriber the one implementation that works with the subscriber's device." Appx29-30 (citing Appx218-219 ¶ 66; Appx225-226 ¶ 75; Appx227 ¶ 77). Returning to the Microsoft Word hypothetical, the Board explained:

> Mehta's MAS would determine that an implementation of Microsoft Word is compatible with the user's computer and would list a single description of this digital content item using the title of the item (in this case, Microsoft Word) as shown in Figures 2 and 11F, regardless of the number of implementations of the item having the same title "Microsoft Word."

Appx31. Thus, the Board found that Mehta "provides only a single description of each item of digital content" to the subscriber.

The Board separately found that the combination of Mehta and Schläpfer teaches this limitation. Appx45-47. As it explained, "Schläpfer describes the known

problem of a mobile device having limited resources such as a small display screen" and the resulting constraints on the amount of information that could be displayed. Appx46. The Board also found that although VideoLabs had identified two other possible solutions to address the problem of a small screen, that was not enough to render the claim patentable, invoking *KSR* to explain that obviousness is appropriate where "there are a finite number of identified, predictable solutions." Appx46 (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007)).

Accordingly, the Board found that a person of ordinary skill at the time of the '790 patent, "faced with the known problem of displaying items of digital content on a mobile device having a small display screen" as taught by Schläpfer, "would have displayed only a single description of each" "item of digital content"—such as the title—"regardless of the number of implementations" of each item, as taught by Mehta, "for the benefit of limiting the amount of information displayed on the small display screen as suggested by both Schläpfer and Mehta." Appx47.

VideoLabs timely appealed the Board's Final Written Decision.

## SUMMARY OF THE ARGUMENT

Rather than challenge the Board's findings on the well-developed record below, VideoLabs effectively seeks a do-over of the IPR proceedings. VideoLabs' positions fail on the merits: it cannot sustain the '790 patent by importing limitations from preferred embodiments into the claims, or demanding that the prior art teach

limitations absent from the challenged claims. Moreover, VideoLabs' arguments can also be rejected because its appeal brief is largely predicated on new theories and arguments that it did not raise or preserve below.

*First*, VideoLabs argues that the Board wrongly interpreted the relationship between "items of digital content" and "implementations" limitations by not requiring the two to be linked together in a two-layer hierarchy as depicted in Figure 5 of the '790 patent. According to VideoLabs, such a hierarchy is the only way to ensure that the "product catalog" stores "in association with each item of digital content, a reference to each implementation of said item of digital content." Blue Br. 25. Thus, VideoLabs contends that the Board incorrectly found that Mehta's "flat database" anticipates the '790 patent. Blue Br. 28-35.

*Second*, VideoLabs contends that the Board "fail[ed] to enforce the 'only a single description' limitation," claiming that (1) Netflix's Petition failed to address this claim element (*id.* at 35-42); (2) the Board read this limitation out of the claims (*id.* at 42-49); and (3) Schläpfer's teachings, in light of Mehta, likewise fail to teach providing "only a single description … regardless of the number of implementations" (*id.* at 49-54).

Each of these arguments are without merit; when the claims of the '790 patent are properly read, substantial evidence supports the Board's findings, and its Final Written Decision that the challenged claims are unpatentable and should be affirmed.

VideoLabs' first argument—that the '790 patent requires a "product catalog" that stores "items of digital content" and "a reference to each implementation" in a two-layer hierarchy—is an attempt to import an exemplary embodiment from the specification into the claims. As the Board correctly held, VideoLabs' position narrowing the claims to a specific embodiment is contrary to this Court's precedent. Applying the plain and ordinary meaning of those claim terms, as the Board did, the only conclusion that can be drawn is that Mehta teaches "receiving and storing a plurality of different implementations of at least one of the items of digital content," and Mehta's "flat database" satisfies the claimed "product catalog" that "includes, in association with each item of digital content, a reference to each implementation of said item of digital content." Appx17-22. VideoLabs cannot circumvent this conclusion by raising a new theory on appeal for the first time—that the "in association with" limitation can only be met through the hierarchical relationship of a preferred embodiment, otherwise that claim language would be rendered superfluous. And, even if it could, VideoLabs ignores the second half of that limitation: the '790 patent requires only that the "product catalog" associate "a *reference to each implementation*" with each "item of digital content"—not associate the "implementation" itself.

VideoLabs' arguments concerning the "single description" limitation fare no better. It effectively concedes that Mehta discloses this limitation by describing

embodiments where its MAS contains "only one implementation compatible with a user's device," because in those circumstances, only a single description will be provided to the client device. Blue Br. 23. To be clear, the challenged claims require only "a plurality of different implementations" for a given "item of digital content"—not a plurality of *multiple compatible "implementations"* for a given *client device*. In arguing that Mehta should not be able to anticipate "by pure happenstance," *id.*, VideoLabs asks this Court to impose a new claim limitation where none exists. Likewise, VideoLabs overlooks the Board's specific finding that a POSITA would have combined Mehta's teachings about application provisioning with Schläpfer's disclosure of a small screen size to arrive at the "single description" limitation, which provides independent support for the Board's determination of unpatentability.

VideoLabs' procedural arguments fare no better. Netflix's Reply was consistent with the theory set forth in the Petition, and appropriately responded to arguments in VideoLabs' Response. Although VideoLabs now contends that the Board relied on theories and evidence that Netflix improperly raised on reply, it never moved to strike those arguments below.[5] Thus, the Board did not abuse its discretion in finding the claims unpatentable.

---

[5] Indeed, VideoLabs did not formally object to this evidence below. Appx2416-2418.

# STANDARD OF REVIEW

In an appeal from an IPR proceeding, the Board's factual determinations are reviewed for substantial evidence and its legal determinations are reviewed *de novo*. *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015). Anticipation is a question of fact, and obviousness is "a question of law based on underlying findings of fact." *Id.* This Court reviews "the Board's claim construction de novo and any underlying factual findings for substantial evidence." *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1217 (Fed. Cir. 2020).

"'Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence,' meaning that '[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (quoting *In re NuVasive, Inc.*, 842 F.3d 1376, 1379-80 (Fed. Cir. 2016)); *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1356 (Fed. Cir. 2021) (same); *TQ Delta, LLC v. DISH Network LLC*, 929 F.3d 1350, 1360 (Fed. Cir. 2019) (same). In other words, "if two 'inconsistent conclusions may reasonably be drawn from the evidence in [the] record, [the Board]'s decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.'" *Elbit*, 881 F.3d at 1356 (citation omitted).

With respect to arguments and evidence allegedly raised for the first time in a reply brief, the Board's determination as to whether an argument is "new," *i.e.*, it presents "an entirely new theory of *prima facie* obviousness absent from the petition," is reviewed *de novo*. *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1008 (Fed. Cir. 2023) (citation omitted). By contrast, the question whether an argument raised by the petitioner in reply is properly responsive to one made in the Patent Owner Response is reviewed for abuse of discretion. *Id.*

## ARGUMENT

## I. THE BOARD CORRECTLY FOUND THAT MEHTA TEACHES BOTH "ITEMS OF DIGITAL CONTENT" AND "DIFFERENT IMPLEMENTATIONS" OF THOSE ITEMS.

VideoLabs' primary argument—that the Board erred by "eliminating the need for a stored hierarchical item-implementation relationship," Blue Br. 25-32—is without merit. As the Board recognized below, VideoLabs' interpretation of the '790 patent improperly seeks to import an embodiment from the specification into the claims, and there is no basis for such a restrictive reading of the challenged claims. The '790 patent requires "receiving and storing … a plurality of items of digital content … including receiving and storing a plurality of different implementations of at least one of the items of digital content" and a "product catalog [that] includes, in association with each item of digital content, a reference to each

implementation." Mehta's MAS that includes application profiles arranged in a "flat database" teaches exactly that.

The Board correctly found that VideoLabs' interpretation is nothing more than an "attempt to narrow the scope of the claimed 'different implementations' by improperly reading an example from the Specification into the claims." Appx20-21. Although VideoLabs pointed below to the "product entry" depicted in Figures 5 and 6 of the '790 patent as "arranging implementations in a 2-layer hierarchy, or a clustered rather than flat database," the Board recognized VideoLabs "ha[d] not shown 'a clear indication in the intrinsic record that the patentee intended the claims to be so limited,'" "nor do the claims require 'cluster[ing] in terms of implementations.'" Appx21 (quoting *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012)). Thus, the Board found that the claimed "plurality of different implementations of at least one of the items of digital content" "does not require storing the implementations in a multi-level data structure." Appx21-22. As a result, the Board applied the plain and ordinary meaning of "items of digital content" and "implementations," just as the parties agreed it should. Appx115; Appx1990-1991.

Applying that meaning, the Board found that Mehta need not store an application profile (*e.g.*, for "Microsoft Word") and the "references" to its "different implementations" in a hierarchical database structure in order to anticipate. Instead, the Board found that "Mehta's disclosure of receiving and storing functionally

equivalent programs having the same name that are capable of running on multiple kinds of devices, such as Microsoft Word for Windows and Microsoft Word for Apple Mac" falls within the scope of the '790 patent's "receiving and storing" limitation. Appx20-22. This determination is supported by substantial evidence, and should be affirmed.

### A. VideoLabs Improperly Seeks to Limit Claims Based on Preferred Embodiments.

Undeterred by the Board's findings, VideoLabs shifts its position on appeal to contend that "Figure 5 illustrates this logical, hierarchical relationship, in which two or more implementations are associated in memory with their corresponding item of content." Blue Br. 27-29 (citing Appx67-68). First, VideoLabs ignores that its cited figures depict how the '790 patent stores a "product entry 56," not the claimed "item of digital content." *Compare* Appx67-68, *with* Appx84(15:35-61). But more importantly, this Court "has repeatedly 'cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346-47 (Fed. Cir. 2015) (citation omitted); *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, 805 F.3d 1102, 1109-10 (Fed. Cir. 2015) (same); *CAO Lighting, Inc. v. Feit Elec. Co., Inc.*, No. 2023-1906, 2024 WL 4503218, at *3 (Fed. Cir. Oct. 16, 2024) (same). Yet that is precisely what VideoLabs seeks to do here.

In effect, VideoLabs simply repackages the argument it made below that Mehta does not disclose "receiving and storing" both "a plurality of items of digital content" and "a plurality of different implementations." Appx1993-1996. As to those limitations, VideoLabs relied on Figure 6 of the '790 patent to argue "that the concept of 'items of content' is distinct from the concept of implementations." Appx1995. But the Board rejected that argument as an attempt to "improperly read[] an example from the Specification into the claims." Appx20-21. Now, VideoLabs presents the same argument in different clothes—this time focusing on the "in association with" limitation.

VideoLabs asserts that the Board should have used the disclosures of Figures 5 and 6 to "capture the scope of the actual invention" and that doing so would not "narrow the claims to the preferred embodiment." Blue Br. 31-32 (citation omitted). VideoLabs now contends that its proposed interpretation is "using the specification to interpret the meaning," *id.*—an about-face from its representation below that no claim construction was necessary. *See* Appx1990-1991. This is effectively an attempt to define the claims through the specification's disclosure. But as this Court has recognized, "the inventor's written description of the invention … is relevant and controlling ***insofar as it provides clear lexicography*** or disavowal of the ordinary meaning." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed.

Cir. 2004) (emphasis added). As the Board already found, the specification of the '790 patent does no such thing. Appx21.

As a matter of law, the claims are not limited to a hierarchical database structure merely because this is the only embodiment depicted in the '790 patent figures. This Court has repeatedly explained that "[e]ven in the case where the specification describes only a single embodiment, we will not limit the claims to that embodiment 'unless the specification makes clear that the patentee … intends for the claims and the embodiments in the specification to be strictly coextensive.'" *CAO Lighting*, 2024 WL 4503218, at *3 (quoting *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005)). Here, rather than indicate that Figures 5 and 6 are "strictly coextensive" with the claimed invention, the '790 patent states explicitly that this embodiment is only "illustrative": "[a]lthough the present invention has been described with reference to specific exemplary embodiments, *it will be recognized that the invention is not limited to the embodiments described* … the specification and drawings *are to be regarded in an illustrative sense* rather than a restrictive sense." Appx84(15:11-18). And even the patent's express description of a "product entry" is permissive: the '790 patent explains that "any particular product entry in the catalog 54 *can* include references to multiple implementations of the product." Appx81(9:49-51) (emphasis added). In arguing for a "restrictive" interpretation of the claim language, VideoLabs

contravenes the plain language of the inventors themselves. *See* Appx81(9:49-51); Appx84(15:11-18).

Indeed, there is a "heavy presumption" that terms should be afforded their plain and ordinary meaning. *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 857 (Fed. Cir. 2014) (citation omitted). In other words, "[i]t is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Rather, the "patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Id.* (citation omitted). At bottom, VideoLabs does not even attempt to meet this "exacting" standard. *See id.* at 1366. At most, VideoLabs argues that "[r]ecording these relationships in its product catalog is fundamental to how the download manager fulfills its function of creating a centralized, scalable content store." Blue Br. 29. But the "functions" it points to— "show[ing] users only a single entry for each item even when there are multiple suitable implementations for the user's device" and "facilitat[ing] the optional 'best-fit implementation' feature described as part of a preferred embodiment," *id.*—are both unclaimed features. As discussed *infra*, the claims do not recite "multiple suitable implementations"; by VideoLabs' own admission, the "best-fit" feature is optional. In short, there is no basis for reading

the '790 patent to require any additional structure not recited by the claims themselves.

VideoLabs fails to identify any error in the Board's application of the plain and ordinary meaning of "items of digital content" and "implementations." Its argument that the hierarchical relationship depicted in Figures 5 and 6 should be imported into the claims is contrary to this Court's precedent. The Board's finding should be affirmed.

## B. VideoLabs' Arguments Regarding the "In Association With" Limitation Are Unavailing.

VideoLabs is also incorrect that the Board's decision renders superfluous the requirement that "implementations" be "in association with each item of digital content." Blue Br. 21, 30-31. First, VideoLabs wrongly excerpts the claim—it is not an "implementation" that must be associated with each "item of digital content," but "*a reference to*" that "implementation." And, VideoLabs' assertion that the Board did not specifically address this argument in its Final Written Decision, *id.* at 30, is without merit: the Board's reasoning did not focus on this limitation because VideoLabs never contested it or raised this argument below. *See* Section III, *infra*.

As an initial matter, the plain language of the claim disproves VideoLabs' theory that absent a hierarchical relationship between "items of digital content" and "implementations," the "in association with" limitation is "left with no work to do." Blue Br. 21. Rather, as Netflix explained below—and the Board agreed—the URL

and other data—including the name of the application (*i.e.*, its "title")—stored in Mehta's application profile (which is part of Mehta's MAS) provides an "association" between an "item of digital content" and its "different implementations."  Appx121-123; Appx2267-2269; Appx23-26.  But without the "in association with" limitation, Mehta's MAS could satisfy the claims by simply storing a list of URLs (a "reference to each implementation") and not indicating which "item of digital content" each URL on the list belongs to.  Because the claims require the "reference" to each "implementation" to be "in association with" its "item of digital content," the URLs must be stored in such a manner that they are mapped to a particular "item of digital content."  And that is what Mehta teaches, as the Board correctly found.  Appx24-26 ("Mehta … stores application profiles, where each application profile includes a URL for an application.").

VideoLabs' remaining arguments are also unavailing.  For instance, VideoLabs argues that the use of the word "'of' to link the 'implementations' and 'items' indicates that each implementation belongs to a particular item of content." Blue Br. 27.  But the Board's decision is not inconsistent with the proposition that "each implementation belongs to a particular item of content."  *Compare id.*, *with* Appx17-22 (finding Mehta discloses multiple "implementations" of a single "item of digital content," *e.g.*, "Microsoft Word").  Likewise, VideoLabs argues that "the 'operating' step further defines the required relationship between items of content

and their implementations." Blue Br. 27. But Netflix does not contend, and the Board did not find, that there need not be *any* relationship between "items of digital content" and their "implementations." Rather, the Board found only that the relationship need not take the form of the hierarchy shown in Figures 5 and 6 of the '790 patent. Appx20-22.

In short, nothing in the '790 patent suggests, as VideoLabs now argues, that the only way to associate "implementations" and "items of digital content" is to store them hierarchically. This challenge, too, falls flat.

### C. When the Plain and Ordinary Meaning Is Properly Applied, Mehta Teaches the Claimed "Items of Content" and "Implementations," as the Board Correctly Determined.

Interpreting the '790 patent's claims according to their plain and ordinary meaning and declining to import additional limitations from the specification, the Board correctly found that Mehta anticipates the claims of the '790 patent. Appx17-22; Appx31. This finding is supported by substantial evidence. *Contra* Blue Br. 32-35.

As the Board recognized, in arguing this limitation below, Netflix and VideoLabs "framed this dispute, in part, as whether Microsoft Word for Windows and Microsoft Word for Apple Mac are different implementations of the same application or are different applications." Appx18. If the former, then Mehta's MAS satisfies the claim language because it would store the two as separate, associated

entries in its "flat database," and thus include multiple "implementations" of a single "item of digital content": "Microsoft Word." Appx17-22. The Board acknowledged that VideoLabs' own expert, Dr. Goodrich, supported this very view: he testified both in his declaration and at deposition that Microsoft Word for Windows and Microsoft Word for Mac are functionally equivalent programs and "would be different implementations of the same product."[6] Appx18. Similarly, Dr. Goodrich also opined that for an "item of digital content" like the film *The Lion King*, "a .MP3 and a .MOV are different implementations of the same product." Appx19. Mapping Dr. Goodrich's testimony to Mehta's disclosure of "functionally equivalent programs having the same name," the Board found that Mehta discloses "items of digital content" having multiple "implementations." Appx22; Appx333, [0098]; *see also* Appx218-219 ¶ 66.

The Board further found that Mehta's "product catalog" contains a "reference" to each "implementation," namely a URL, and that these "references" are associated with an "item of digital content" because they are stored in Mehta's application profile for a particular "item of digital content." Appx24-26 (citing Appx276; Appx219-221 ¶¶ 67-68). Accordingly, it concluded that Mehta's "flat

---

[6] Although Dr. Goodrich subsequently attempted to walk back this testimony, *see* Appx2336(48:12-20), the Board was entitled to reject his later testimony as not credible. *See* Appx18-19; *Apple Inc. v. Corephotonics, Ltd.*, 81 F.4th 1353, 1360 (Fed. Cir. 2023) ("The Board is … of course free to make credibility determinations, weigh the evidence, and decide for itself what persuades it.").

database"—in which each "implementation" is stored as a separate entry but with a title identifying the "item of digital content"—is within the scope of the claims. Appx21; *see also* Appx18 (crediting portions of Dr. Goodrich's testimony); Appx2720(37:2-10) (discussing the relationship between the "item of digital content" and "implementation" for another application, "Doom"); Appx2724-2725(41:16-42:8) (same).

Given the clear teachings of the prior art, and the expert testimony of both Mr. Wechselberger and Dr. Goodrich regarding those teachings, there is substantial evidence for the Board's findings, *i.e.*, evidence that "a reasonable mind might accept as adequate to support a conclusion." *Elbit*, 881 F.3d at 1356 (quoting *NuVasive*, 842 F.3d at 1379-80); *see also Teva*, 8 F.4th at 1359 ("Under this deferential standard of review, we cannot replace the Board's reasonable interpretation of references with Teva's interpretations."); *TQ Delta*, 929 F.3d at 1360 ("If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.") (citation omitted).

Against this backdrop, VideoLabs' only recourse is to rely on its new, untimely theory—that neither Netflix nor the Board "confront[ed] the 'in association with' requirement." Blue Br. 33. Not true. As noted, Netflix addressed the "in

association with" requirement below, and VideoLabs left Netflix's arguments on that score unaddressed in its sur-reply. Appx2267-2269; *see generally* Appx2420-2451. Nonetheless, the Board rejected the arguments VideoLabs raised on that limitation below, which VideoLabs now abandons on appeal. Appx22-26; *see also* Statement of the Case, *supra*. And neither Netflix nor the Board could have refuted the argument that the "in association with" limitation would be rendered superfluous—because VideoLabs did not raise that argument below.

In short, there is substantial evidence to support the Board's findings that Mehta discloses the "items of digital content" and "implementations" limitations, and those findings should be affirmed.

### D.  If this Court Determines That a Different Claim Construction Is Warranted, Remand, Not Reversal, Is Appropriate.

Lastly, VideoLabs is incorrect that, if its claim constructions are adopted, "the proper remedy is reversal." Blue Br. 34. The Board has not analyzed the challenged claims under anything other than their plain and ordinary meaning; even if another construction is warranted, VideoLabs cannot "prejudge whether the correct claim construction permits the same factual findings or obviousness conclusion." *Kaken Pharm. Co. v. Iancu*, 952 F.3d 1346, 1355 (Fed. Cir. 2020). Indeed, this Court regularly remands cases to the Board for additional factfinding when a different claim construction is determined appropriate. *See, e.g.*, *id.* ("We conclude that the appropriate course in this case, as in so many others involving a reversal of a Board

claim construction, is to vacate the Board's decision and remand the matter."); *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1358 (Fed. Cir. 2015) ("We reverse the Board decision, and we remand for further proceedings under the correct construction."). Thus, if the Court elects to modify the Board's construction in any respect, vacatur and remand is the appropriate remedy—not reversal.

## II. THE BOARD CORRECTLY FOUND THAT MEHTA AND SCHLÄPFER DISCLOSE THE "SINGLE DESCRIPTION" LIMITATION.

VideoLabs also misses the mark in challenging the Board's finding that Mehta, alone or in combination with Schläpfer, discloses "provid[ing] only a single description of each item of digital content … regardless of the number of implementations of each said item." *Contra* Blue Br. 43-54. First, the Board correctly found that Mehta's filtering system ensures that only a single "implementation" is displayed to the user despite the number of different implementations—and that "implementation" has "only a single description" to be presented. Appx26-31. Alternatively, the Board also found that even if Mehta's MAS included multiple "implementations" of an "item of digital content" that could be presented for download, it would have been obvious to one of skill in the art to display "only a single description"—such as the title—as a solution to the problem of limited space on a user device. Appx43-47. VideoLabs' challenges to these well-founded determinations should be rejected.

## A. VideoLabs' Claim Construction Arguments Are Inconsistent with the '790 Patent.

VideoLabs argues that the "single description" limitation requires "providing a single description of each item despite having multiple compatible implementations of each item." Blue Br. 46. As described *infra*, this argument was not raised to the Board and has been forfeited.

More importantly, however, VideoLabs' assertion fails on the merits. The claims themselves require only "a plurality of different implementations," not a plurality of different ***compatible*** "implementations" or multiple compatible implementations. Appx84(15:35-61). The '790 patent specification is in accord: it confirms that the claimed "product catalog" "shows 'only those products that have ***at least one*** implementation compatible with the subscriber's device.'" Blue Br. 47 (quoting Appx81(9:54-56)) (emphasis in original). Of course, a system that provides a single compatible "implementation" to a user's device—and a "single description" of that single "implementation"—falls squarely within the scope of the invention. *See Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999) ("Use of the phrase 'at least one' means that there could be only one or more than one.").

Despite this, VideoLabs asserts that the specification of the '790 patent "contemplates multiple compatible implementations of that item" in some embodiments. Blue Br. 47. Even accepting that as true, VideoLabs has two problems. First, what a patent ***contemplates*** and what it ***claims*** are two different

things.  *See, e.g.*, *Williamson*, 792 F.3d at 1346-47 (the claims are ordinarily not limited "to preferred embodiments or specific examples in the specification"); *Imaginal*, 805 F.3d at 1109-10 (same); *CAO Lighting*, 2024 WL 4503218, at *3 (same).  Indeed, even where a particular embodiment "captures the scope" of the alleged invention, features of that embodiment are imported into the claims only where the patent provides lexicography or disavowal.  *Contra* Blue Br. 48; *see also C.R. Bard*, 388 F.3d at 862 (lexicography or disavowal are required to rely on embodiments in specification as defining claim scope).  Simply put, even if there may be an "advantage" to supporting more than one compatible "implementation" of an "item of digital content," as VideoLabs contends, *see* Blue Br. 47, that possibility cannot be reason enough to add a new limitation into the claims.

Second, even if the claims include within their scope "multiple compatible implementations" of an "item of digital content," anticipation does not require proving that ***all possible embodiments*** of the claim are non-novel.  Rather, "an elementary principle of patent law" is that where "a claim covers several [embodiments], the claim is 'anticipated' if *one* of them is in the prior art." *Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985) (citation omitted) (emphasis in original); *see also King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1276-77 (Fed. Cir. 2010) (same).  Whether additional embodiments may ***also*** fall within the scope of the claims is irrelevant.  *See Titanium Metals*, 778 F.2d at 782.

Moreover, VideoLabs admits that under the Board's reading, "the claim could be satisfied by mere happenstance" in situations where each "item of digital content" only has a single compatible "implementation." Blue Br. 48. But anticipation does not require a motivation to reach the claimed invention. *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1297 (Fed. Cir. 2012) ("For anticipation, of course, motivation in the prior art is unimportant.") (citing *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1347 (Fed. Cir. 2009)); *see also Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) (permitting consideration of what is "necessarily present[] or inherent" in the anticipating reference). Rather than "miss[ing] the point of that limitation," as VideoLabs suggests (Blue Br. 48), the Board simply determined that Mehta's disclosures satisfied the express limitations of the claims. There can be no fault in that finding.

Indeed, the Board relied on testimony from Mr. Wechselberger and Dr. Goodrich to find that "Mehta's disclosure of functionally equivalent programs having the same name that are capable of running on multiple kinds of devices means that each program corresponds to a different device having different capabilities." Appx29 (citing Appx218-219 ¶ 66, Appx2069 ¶ 66). It further found that, in Mehta, "the MAS only lists those applications that are supported by the subscriber's device," which means that "the MAS would only present to the subscriber the one implementation that works with the subscriber's device." Appx29-30 (quoting

Appx336, [0117], and citing Appx218-219 ¶ 66; Appx225-226 ¶ 75; Appx227 ¶ 77).

And, it pointed to Mehta's express disclosures to determine that "Mehta displays the

name [of an item of content] only once, regardless of the number of implementations

that have the same name." Appx30 (citing Appx328, [0067]; Appx266; Appx301).

For instance, as the Board recognized, Figure 2 of Mehta (reproduced below) depicts

a single description for each of the six "items of digital content."



Appx266; *see also* Appx30. These disclosures, combined with the expert testimony

of Mr. Wechselberger and Dr. Goodrich, provide substantial evidence for a finding

that Mehta displays "a single description of each item of digital content … regardless

of the number of implementations." *See Elbit*, 881 F.3d at 1356; *Teva*, 8 F.4th at

1356; *TQ Delta*, 929 F.3d at 1360.

Unable to controvert these findings, VideoLabs surmises that if multiple compatible "implementations" of the same "item of digital content" were present in the MAS, then Mehta would display multiple descriptions. Blue Br. 35; *see also* Appx2721(38:10-14). But that contention finds no support in Mehta's disclosure, and VideoLabs cannot avoid anticipation by speculating about what is absent from the prior art. Nor can it ignore that, as the Board found and all parties agree, Mehta "provid[es] only a single description," *see* Appx84(15:35-61), where its MAS includes a single compatible "implementation" per device. The inquiry thus ends here: "[a] prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention." *King Pharms.*, 616 F.3d at 1276 (quoting *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003)). That is undisputedly the case here.

In short, the Board properly found that Mehta discloses providing "only a single description" of each "item of digital content."

## B. The Board's Treatment of the "Single Description" Limitation Did Not Violate the APA or the Board's Regulations.

Unable to refute Mehta's disclosures on the merits, VideoLabs also asserts that the Board should not have considered certain disclosures in Mehta, including Figures 2 and 11F. Blue Br. 38-39. But VideoLabs also cannot prevail on appeal by asking this Court to set aside relevant, timely evidence. Netflix timely identified Mehta's Figures 2 and 11F below, both in the Petition and in order to rebut positions

57

taken in VideoLabs' Response; tellingly, VideoLabs did not move to strike or otherwise challenge that portion of Netflix's submission even as it challenged others. *See, e.g.*, *Supercell Oy v. GREE, Inc.*, No. 2020-2005, 2021 WL 4452082, at *3 (Fed. Cir. Sept. 29, 2021) ("We routinely decline to consider arguments raised for the first time on appeal because the failure to raise an argument before the Board constitutes a forfeiture of that issue.") (citation omitted); Appx2445-2447; *see also* Appx2414-2416. Accordingly, the Board did not abuse its discretion in relying on the evidence and arguments to find this limitation met by Mehta.

First, as a preliminary matter, VideoLabs incorrectly suggests that the scope of Netflix's Reply is subject to *de novo* review. Blue Br. 37. It is not. As this Court has acknowledged, whether a petitioner "raised, in reply, 'an ***entirely new theory of prima facie obviousness*** absent from the petition'" is reviewed *de novo*. *Corephotonics*, 84 F.4th at 1008 (emphasis added). But VideoLabs does not contend that Netflix's reply arguments regarding the "single description" limitation amounted to "an entirely new theory of *prima facie* obviousness." *Id.* Nor could it: the Petition expressly addressed this limitation, *see* Appx127-129, and from day one, Netflix advances the same grounds and the same prior art references. Indeed, in its Petition, Netflix cited paragraph 117 of Mehta, which discusses Figure 11F. Appx128 (citing Appx336, [0117]). And, in finding that Mehta discloses this limitation, the Board cited extensively to Netflix's Petition and portions of Mr.

Wechselberger's declaration referenced therein. Appx28-31 (citing Appx128-129; Appx218-219 ¶ 66; Appx225-227 ¶¶ 75-77).

As a result, the operative question here is whether Netflix's reply arguments were "responsive" to an argument made in the Patent Owner Response—and that is reviewed for abuse of discretion. *Corephotonics*, 84 F.4th at 1008. "Abuse of discretion is a highly deferential standard of appellate review." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017). The Board did not reach this "responsiveness" question below because VideoLabs never challenged Netflix's Reply on this point. But it nevertheless had no trouble recognizing that Netflix's theory was set forth in the Petition. Appx30 (citing Appx128-129).

Regardless, Netflix's Reply arguments directly responded to those raised in VideoLabs' Patent Owner Response. *Compare* Appx2009-2012, *with* Appx2269-2272. In fact, as Netflix explained in its Reply, "the Petition specifically explains how Mehta teaches this limitation, negating PO's unsupported argument that the Petition does not." Appx2269. For instance, Netflix's Petition explains that in Mehta, "the MAS only lists those applications that are supported by the subscriber's device." Appx128. Netflix further added that Mehta's system allows a user to "avoid the problem of having to explicitly select a compatible application." Appx128. And Mr. Wechselberger's declaration, cited in the Petition, concluded

that Mehta discloses a "single description" for each "item of digital content," because each corresponds to a different set of device capabilities. Appx128-129 (citing Appx227 ¶ 77). Netflix's argument in Reply regarding Figures 2 and 11F of Mehta was consistent with this theory, as those figures simply further illustrate Mr. Wechselberger's opinion that Mehta discloses a "single description" for each "item of digital content," as the lists of applications shown in those figures provide "only a single description" for each "item of digital content." *See* Appx2269-2270 (citing Appx266; Appx301). Moreover, this was directly responsive to VideoLabs' argument in its Patent Owner Response that in some circumstances, "Mehta discloses that the MAS would show both applications to a user, leaving the user to choose between the two." Appx2012. Netflix's Reply was also responsive to Dr. Goodrich's declaration, which specifically discussed Figure 2 of Mehta. Appx2058-2059 ¶ 45.

While VideoLabs continued to press this limitation in its Sur-Reply, and complained about the sufficiency of Figure 11F's disclosure, it never once asserted that Netflix's Reply belatedly identified new evidence or argument, or that it exceeded the scope of VideoLabs' response—nor did it lodge an objection to this evidence or argument. That was unsurprising: "the introduction of new evidence in the course of the trial is to be expected in [IPR] proceedings," and is proper "as long as the opposing party is given notice of the evidence and an opportunity to respond

to it." *Genzyme Therapeutic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1366 (Fed. Cir. 2016). VideoLabs had that opportunity, and took it.

This Court's decision in *Apple Inc. v. Andrea Electronics Corp.*, 949 F.3d 697 (Fed. Cir. 2020), provides a close comparison. There, the petition relied on an exemplary algorithm disclosed in the prior art, and in its reply, the petitioner offered a second example of that algorithm to respond to arguments made in the patent owner's response. *Id.* at 706. Observing that the example relied on in reply was neither a new reference nor an unidentified embodiment of a previously cited reference, the Court held that it was permissible for the petitioner to rely on "the same algorithm from the same prior art reference to support the same legal argument" to respond to the arguments raised in the Patent Owner Response. *Id.* Indeed, the Court observed that precluding such evidence would create a high standard requiring petitioners to "either discuss all potential permutations of the [prior art disclosures] or risk waiving the opportunity to further discuss other relevant examples in their reply." *Id.* And, it found that Apple's invocation of additional examples "squarely respond[ed] to [the] Patent Owner Response" by using them to refute the patentee's argument that the prior art failed to disclose a disputed claim limitation. *Id.* at 707.

Here, even setting aside the references to Figures 2 and 11F in the Petition and in Dr. Goodrich's declaration, it was permissible for Netflix to rely on Figures

2 and 11F in Reply because they are additional examples of the same embodiment from "the same prior art reference to support the same legal argument"—that Mehta discloses the display of "only a single description … regardless of the number of implementations." *See id.* Netflix's invocation of those figures on Reply to respond to arguments in VideoLabs' Patent Owner Response was entirely permissible. *Cf. Rembrandt Diagnostics, LP v. Alere, Inc.*, 76 F.4th 1376, 1385 (Fed. Cir. 2023) (reply argument proper where the petitioner "d[id] not point to any new embodiments not previously identified to advance a meaningfully distinct contention from what it first asserted in its petition"); *Corephotonics*, 84 F.4th at 1010-11 (the patent owner's "broad attack on [the petitioner's] showing made it appropriate for [the petitioner] to respond with an elaboration of the bases" for unpatentability).

In short, the Board did not abuse its discretion in considering Figures 2 and 11F of Mehta, and its conclusion that Mehta teaches the "single description" limitation should be affirmed.

### C. VideoLabs Fails to Overcome the Board's Finding That Mehta and Schläpfer Render the "Single Description" Limitation Obvious.

Lastly, VideoLabs fails to controvert the Board's obviousness findings regarding the "single description" limitation. As the Board correctly determined, Schläpfer provides a motivation to display "only a single description … regardless of the number of implementations," by identifying the problem of limited screen space. Even VideoLabs could only point to two other possible approaches to the

problem, which renders what is claimed one of "a finite number of identified, predictable solutions" and therefore obvious. Appx46 (quoting *KSR*, 550 U.S. at 421).

VideoLabs asserts that neither Netflix nor the Board identified this limitation in Schläpfer. Blue Br. at 50-51. Not so. As Netflix explained, and the Board ultimately agreed, Schläpfer teaches that user devices have limited screen space, such that one of skill in the art would be motivated to avoid providing duplicative descriptions of the same "item of digital content":

> In view of Mehta's teaching of avoiding the problem of having to explicitly select a compatible application by only listing the applications that are supported by the subscriber's device, and Schläpfer's teaching of limited screen space of the mobile devices and limited bandwidth of the mobile network, "provid[ing] only a single description of each item of digital content in said portion, regardless of the number of implementations of each said item" of element 2[e] would have been obvious to a POSITA at the time of the alleged invention.

Appx144 (citing Appx242-243 ¶¶ 107-08). On this record, the Board agreed "that Schläpfer describes the known problem of a mobile device having limited resources such as a small display screen and that a person of ordinary skill would have therefore recognized that the amount of information displayed on the small screen would be limited." Appx46. VideoLabs' assertion that "[n]obody contends that Schläpfer discloses" providing only a single description, Blue Br. 40, simply misses the point: as the Board correctly held, Schläpfer would guide one of skill in the art

to reach the claimed invention, and nothing more is needed to establish obviousness. *See Apple Inc. v. Gesture Tech. Partners, LLC*, 129 F.4th 1367, 1378 (Fed. Cir. 2025) ("[E]xpress disclosures are not required when a petitioner is arguing obviousness."); *see also Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011) (noting that "suggestions beyond the literal teachings of those art references … [can] provide the sources of evidence that an ordinary skilled artisan might have found and combined at the time of the invention"); *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1328-29 (Fed. Cir. 2009) ("Common sense has long been recognized to inform the analysis of obviousness if explained with sufficient reasoning.").

VideoLabs' invocation of *KSR* likewise fails. *See* Blue Br. 52-54. The question at bar is not whether there are "innumerable ways to make use of a small screen," as VideoLabs suggests, *contra* Blue Br. 53, but how to provide information about applications available for download given the problem of a small screen for display. That is, the claims are not drawn to vague and unlimited "uses" of a client device—they are drawn to the provision of information about "items of digital content" in a database. Appx84(15:35-61). Together, Mehta and Schläpfer teach a download manager for those "items of digital content," identify the problem of providing information about available applications with limited displays, and suggest displaying limited information—*i.e.*, only one description of an "item of

64

digital content"—to conserve space. Appx46-47, *see also* Appx323, [0005];

Appx1047. Even VideoLabs cannot identify more than two, let alone

"innumerable," alternative options. Blue Br. 52-53. Under these circumstances, the

claims are obvious. *See, e.g.*, *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1340

(Fed. Cir. 2020) (limitation was obvious in light of "two predictable choices for

when to perform plotting"); *Bayer Schering Pharma AG v. Barr Lab'ys, Inc.*, 575

F.3d 1341, 1350 (Fed. Cir. 2009) (claims held to be obvious where "[t]he prior art

would have funneled" a POSITA to two "identified, predictable solutions"); *Perfect

Web*, 587 F.3d at 1331 (limitation obvious in light of three potential solutions); *In

re: Copaxone Consol. Cases*, 906 F.3d 1013, 1025-26 (Fed. Cir. 2018) (limitation

obvious despite at least six potential solutions).

*   *   *

Thus, the Board's determination that Mehta discloses, and Mehta and

Schläpfer together disclose, "provid[ing] only a single description of each item of

digital content" should be affirmed.

## III. VIDEOLABS DID NOT PRESERVE THE ARGUMENTS RAISED IN ITS OPENING BRIEF.

As explained *supra*, VideoLabs' arguments all fail on their merits.

Additionally, VideoLabs' arguments can likewise be rejected because they have not

been preserved for appeal. Throughout its opening brief, VideoLabs raises new

bases for patentability and claim construction arguments that it could have raised

below but did not; complains about the scope of Reply arguments it never moved to strike; and contends that the Board should never have instituted IPR in the first place—a decision that is decidedly not available for appellate review.

### A. VideoLabs' Substantive Arguments Regarding the "In Association With" and "Single Description" Limitations Are Forfeited.

In this appeal, VideoLabs argues that a hierarchical relationship between "items of digital content" and "implementations" is the only way to ensure that "the product catalog includes, in association with each item of digital content, a reference to each implementation of said item of digital content." *See* Blue Br. 29-34. Put differently, VideoLabs argues that the "in association with" limitation is rendered superfluous by the Board's decision not to require a hierarchical relationship between "items of digital content" and "implementations." *See id.* at 30. But it never raised that argument below, despite having the opportunity to do so. Instead, it challenged only a different part of that limitation, contending that Mehta's "product catalog" did not store any "references" to the "implementation" at all. Appx2003-2009; Appx2431-2434. Because VideoLabs never raised this position below, it is forfeited. *See, e.g.*, *IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395, 1402 (Fed. Cir. 2024) ("[A] party waives an argument that it failed to present to the Board because it deprives the court of the benefit of the Board's informed judgment."); *Google Inc. v. SimpleAir, Inc.*, 682 F. App'x 900, 903 (Fed. Cir. 2017) ("[A] party may not introduce new claim construction arguments on appeal or alter

the scope of the claim construction positions it took below.") (quoting *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006)).

To be sure, VideoLabs took the position that Mehta discloses only one "implementation" for each "item of digital content," and thus does not "stor[e] a plurality of different implementations of at least one of the items of digital content," as the claims require. Appx1997-2003; Appx2425-2531. In the same vein, VideoLabs also argued that the claims require a "2-layer hierarchy," and that Mehta's "flat database" was insufficient.[7] *See* Appx20-21. But those arguments related only to the "items" and "implementations" themselves: VideoLabs never once pointed to the "in association with" limitation to challenge the sufficiency of Mehta's disclosures. *See* Appx17-22.

Instead, VideoLabs disputed a different part of the limitation altogether. It contended that "even if Mehta did disclose 'implementations of said item of content,' it still fails to disclose 'a product catalog including, in association with each item of content, *a reference to each implementation*.'"[8] Appx2005 (emphasis in original). Specifically, VideoLabs asserted that "Mehta's 'URL' or 'other location

---

[7] Notably, the oral hearing below was the first instance where VideoLabs explicitly argued the claims require a "hierarchy" such as that disclosed in Figure 5 of the '790 patent. *See, e.g.*, Appx2713(30:19-23) ("[T]he hierarchy is inherently baked in.").

[8] VideoLabs also acknowledged that Netflix had mapped Mehta's disclosure to this limitation. *See* Appx2006 ("Petitioner first maps Mehta's disclosure of 'a URL or other location reference' … to 'a reference to each implementation of said item of content'").

reference' [for each implementation] … is [not] included in the 'product catalog,' as required by the claims." *See* Appx2006-2009; *see also* Appx2431-2434. The Board disagreed, Appx24-26, and VideoLabs does not challenge that finding on appeal. Simply put, VideoLabs' newfound assertion that Netflix's Petition "did not map anything in Mehta" to the '790 patent's requirement that "multiple implementations be 'in association with' an item of content" is not true, as explained above. *Contra* Blue Br. 32. Moreover, because VideoLabs raises it for the first time on appeal, it has been forfeited. *See, e.g.*, *Supercell*, 2021 WL 4452082, at *3 (citing *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020)) ("We routinely decline to consider arguments raised for the first time on appeal because the failure to raise an argument before the Board constitutes a forfeiture of that issue.").

Similarly, with respect to the "single description" limitation, VideoLabs raises another theory of patentability in its opening appeal brief that it did not preserve below: that the "single description" limitation *requires* "providing a single description of each item despite having *multiple compatible implementations* of each item." Blue Br. 46 (emphasis added). Because VideoLabs' argument regarding "multiple compatible implementations" appears nowhere in its papers below, Appx2009-2012; Appx2019-2020; Appx2434-2435; Appx2442-2444, it cannot raise it on appeal. *See Supercell*, 2021 WL 4452082, at *3.

In short, a litigant who "does not take [its] opportunities" to raise an argument below "and is then further disappointed by a Board [determination] should be encouraged to avoid waste of appellate resources." *Google*, 980 F.3d at 864. Having failed to convince the Board of the supposed deficiencies in Netflix's Petition, VideoLabs cannot now ask this Court to rely on new and additional arguments in overturning the Board's decision.

### B. VideoLabs' Procedural Challenge Regarding the "Single Description" Limitation Is Forfeited.

VideoLabs' procedural argument—that the Board abused its discretion by considering supposedly "new" evidence and argument from Netflix's Reply, Blue Br. at 38-39—has also been forfeited. VideoLabs never moved to strike or otherwise challenged the timeliness of this evidence below, and it cannot do so for the first time on appeal. *See Supercell*, 2021 WL 4452082, at *3; *cf. Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1381 (Fed. Cir. 2009) (failure to "seek to exclude or strike" evidence at a trial resulted in a waiver of that challenge on appeal). In fact, VideoLabs ***did*** complain about the scope of Netflix's Reply arguments on a ***different claim limitation***[9]—but not as they pertained to the "single description" requirement. Appx2445-2447.

---

[9] As to that limitation, the Board rejected VideoLabs' contention that Netflix raised a new argument, Appx52-53. Tellingly, VideoLabs does not renew that challenge on appeal.

Equally misplaced are VideoLabs' repeated criticisms about the Board's institution of IPR in the first place; that "the Board had no lawful choice but to close the book on Netflix's petition." Blue Br. 39; *see also id.* at 35, 42-43. But that decision is expressly insulated from appellate review. *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 52 (2020) ("[A] party generally cannot contend on appeal that the agency should have refused 'to institute an *inter partes* review.'") (quoting 35 U.S.C. § 314(d)). And, in any event, VideoLabs' failure to contest this limitation in its Patent Owner Preliminary Response makes clear that even VideoLabs did not regard it as sufficient to resolve the IPR at the institution stage. *See generally* Appx1310-1323.

* * *

In short, VideoLabs' arguments all fail on the merits. Separately from the merits, VideoLabs has also failed to preserve many of the challenges it raises on appeal.

## CONCLUSION

For the reasons set forth above, the Board's determination that claims 1-14 of the '790 patent are unpatentable should be affirmed.

Dated: April 16, 2025

***/s/ Aliza George Carrano***

Aliza George Carrano
Dane Sowers
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
acarrano@willkie.com
dsowers@willkie.com

Matthew Freimuth
Devon Edwards
WILLKIE FARR & GALLAGHER LLP
787 Seventh Ave.
New York, NY 10019
mfreimuth@willkie.com
dedwards@willkie.com

*Counsel for Appellee Netflix, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 25-1131

**Short Case Caption:** VideoLabs, Inc. v. Netflix, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 13989 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/16/2025

Signature: /s/ Aliza George Carrano

Name: Aliza George Carrano