No. 2025-1131

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

VIDEOLABS, INC.,
*Appellant*,

v.

NETFLIX, INC.,
*Appellee*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board No. IPR2023-00628

# APPELLANT VIDEOLABS, INC.'S REPLY BRIEF

Jaime F. Cardenas-Navia
Michael Matulewicz-Crowley
Nathaniel G. Warner
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
400 Madison Ave., Suite 14D
New York, NY 10017
(212) 381-1965
jcardenas-navia@reichmanjorgensen.com

Christine E. Lehman
Naveed Hasan
Brian C. Baran
Savannah H. Carnes
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1909 K St. NW, Suite 800
Washington, DC 20006
(202) 894-7310
clehman@reichmanjorgensen.com

*Counsel for Appellant VideoLabs, Inc.*

# TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 3

I. The Board's Construction of the Claimed Relationship Between "Items" and "Implementations" Is Contrary to Law and Dispositive. .......... 3

A. There is nothing to import from the specification—the claims expressly require associating an item with multiple implementations. .......... 4

B. Because the Board's error is dispositive, there is no basis for a remand. .......... 11

II. The Board Erred as a Matter of Law by Failing to Enforce the "Only a Single Description" Limitation. .......... 12

A. Netflix's reply cannot cure its failure to address the "only a single description" limitation in its petition. .......... 13

B. On the merits, the Board erred by reading the "only a single description" limitation out of the patent .......... 19

C. Netflix's backup obviousness theory is beyond repair. .......... 23

III. The Record Refutes Netflix's Last-Ditch Forfeiture Arguments .......... 27

CONCLUSION .......... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Evergreen Adhesives, Inc.*,
860 F. App'x 724 (Fed. Cir. 2021) ........ 16

*Apple Inc. v. Andrea Elecs. Corp.*,
949 F.3d 697 (Fed. Cir. 2020) ........ 17

*Apple Inc. v. Gesture Tech. Partners*,
127 F.4th 364 (Fed. Cir. 2025) ........ 12

*Apple Inc. v. Gesture Tech. Partners*,
129 F.4th 1367 (Fed. Cir. 2025) ........ 25

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ........ 25

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ........ 18

*Bio–Rad Labs., Inc. v. Int'l Trade Comm'n*,
998 F.3d 1320 (Fed. Cir. 2021) ........ 29

*Corephotonics, Ltd. v. Apple Inc.*,
84 F.4th 990 (Fed. Cir. 2023) ........ 17, 18

*Gemtron Corp. v. Saint-Gobain Corp.*,
572 F.3d 1371 (Fed. Cir. 2009) ........ 30

*Grace Instrument Indus., LLC v. Chandler Instruments Co.*,
57 F.4th 1001 (Fed. Cir. 2023) ........ 6

*Hewlett-Packard Co. v. Mustek Sys.*,
340 F.3d 1314 (Fed. Cir. 2003) ........ 22

*In re Hodges*,
882 F.3d 1107 (Fed. Cir. 2018) ........ 12

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ........ 13

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ........................................................ 27

*Intertainer, Inc. v. Hulu, LLC*,
600 F. App'x 943 (Fed. Cir. 2016) ................................................... 27

*K/S Himpp v. Hear–Wear Techs., LLC*,
751 F.3d 1362 (Fed. Cir. 2014) ........................................................ 24

*Kaken Pharm. Co. v. Iancu*,
952 F.3d 1346 (Fed. Cir. 2020) ........................................................ 11

*KSR International Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) .................................................................. 26, 27

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ..................................... 13, 16, 17, 30

*Parus Holdings v. Google LLC*,
70 F.4th 1365 (Fed. Cir. 2023) ........................................................ 16

*Perfect Web Technologies, Inc. v. InfoUSA, Inc.*,
587 F.3d 1324 (Fed. Cir. 2009) ........................................................ 25

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................... 8

*Rembrandt Diagnostics, LP v. Alere, Inc.*
¸76 F.4th 1376, 1385 (Fed. Cir. 2023) ............................................... 17

*In re Smith Int'l, Inc.*,
871 F.3d 1375 (Fed. Cir. 2017) ........................................................ 12

*Supercell Oy v. GREE, Inc.*,
2021 WL 4452082 (Fed. Cir. Sept. 29, 2021) ..................................... 30

*Unigene Labs., Inc. v. Apotex, Inc.*,
655 F.3d 1352 (Fed. Cir. 2011) ........................................................ 25

*In re Varma*,
816 F.3d 1353 (Fed. Cir. 2016) .......................................................... 8

**Statutes**

35 U.S.C. §312(a)(3) ................................................................ 13, 15

**Regulations**

37 C.F.R. §42.6(a)(3) ........ 16
37 C.F.R. §42.104(b)(4) ........ 13, 15
37 C.F.R. §42.104(b)(5) ........ 16

## INTRODUCTION

Netflix's brief confirms that the Patent Trial and Appeal Board's three independent legal errors each require reversal.

First, Netflix digs in on the Board's mistaken view that VideoLabs' interpretation of the claimed item-to-implementation relationship requires importing an embodiment from the specification into the claims. As a result, and like the Board, Netflix never grapples with whether the claims' plain language requires a product catalog that links multiple implementations to the same item of content—or said differently, that stores one-to-many item-to-implementations relationships. That is the critical, decisive question. And the answer is yes. There is no need to import from the specification a requirement that already appears on the face of the claims. Given the Board's factfinding, recognizing the required one-to-many relationship between items and implementations puts an end to this case. The Board found that Mehta's product catalog is a "flat database" that does not store relationships between items and multiple implementations of those items. At best, the fact that each application (implementation) has a title (seemingly mapped to the item) reflects a one-to-one relationship. And Netflix never contended otherwise. Reversal is therefore warranted.

Second, Netflix fails to explain away the Board's procedural error regarding the "only a single description" limitation. Netflix's anticipation analysis in its petition ignored that limitation. VideoLabs timely brought

that fatal defect to the Board's attention, arguing in its response that under this Court's binding precedent, Netflix's omission required the Board to reject its argument. Only in its reply did Netflix attempt to confront the limitation for the first time. Although the Board acknowledged the issue when summarizing the parties' arguments, it never got around to adjudicating it. Instead, without considering whether Netflix's new-in-reply theory was properly before it, the Board adopted that theory and ruled in Netflix's favor. In doing so, the Board flouted black-letter law. On appeal, Netflix comes up empty. Netflix does not—because it cannot—identify any place in its petition that addresses the "only a single description" limitation, let alone advances the theory the Board adopted. Instead, Netflix hangs its hat on its right to raise responsive arguments on reply. That gets Netflix nowhere. Responsive or not, Netflix's reply cannot have patched the hole in its petition.

Third, Netflix's attempt to defend the Board's merits analysis fares no better. The '790 patent requires presenting "only a single description of each item" of content "regardless of the number of implementations" of that item. According to Netflix and the Board, Mehta satisfies that requirement even though its system never has multiple compatible implementations that could be streamlined into one description before being presented to the user. That misses the point of the limitation and fails to give any meaning to its "regardless" clause. Netflix never engages with the "regardless" clause or VideoLabs' explanation of its import.

Instead, it fights strawmen. Because Netflix did not and cannot explain how Mehta discloses the entire "only a single description" limitation, reversal is required here too.

As a last resort, Netflix throws forfeiture arguments at all three issues VideoLabs raises on appeal. It is for good reason that Netflix buried these ostensibly threshold points at the back of its brief: None survives even the slightest scrutiny. The issues VideoLabs raises here have been at the heart of this dispute all along.

Any one of the Board's errors warrants reversal. Netflix asks for a remand only on the first issue. Even then, Netflix offers no reason for doing so other than its view that this Court "regularly" remands. That is not how remedies work. Given the Board's undisputed finding that Mehta discloses only one-to-one item-to-implementation relationships, the claim construction dispute is dispositive. Netflix makes no attempt to show otherwise. The Court should therefore reverse.

## ARGUMENT

### I. The Board's Construction of the Claimed Relationship Between "Items" and "Implementations" Is Contrary to Law and Dispositive.

The Board erred as a matter of law by discarding a core, claimed relationship between "items" and their "implementations." Opening.Br.25-32. The claims expressly and unambiguously require the product catalog to associate at least one item of content with its plurality of implementations. But the Board did not require Mehta to disclose any

such association. Opening.Br.29-35. Netflix has no viable response; the claims say what they say. So Netflix, like the Board, sidesteps the claim language and instead pretends that VideoLabs' argument hinges on importing a "hierarchical" relationship embodiment from the specification into the claims. Netflix.Br.40-48. It does not. And given the Board's undisputed finding that Mehta discloses a "flat" relationship between items and implementations—such that there is at best a single implementation associated with an item of content in Mehta's catalog—the Board's error is dispositive. Opening.Br.32-35.

### A. There is nothing to import from the specification—the claims expressly require associating an item with multiple implementations.

The '790 patent spells out the required relationship between items and their implementations in plain English. Opening.Br.27. Claim 2, which is representative for the purpose of this appeal, requires "receiving and storing **a plurality of different implementations of** at least one of the **items** of digital content." Appx84 (15:37-44) (emphasis added). And it requires "maintain[ing] a product catalog" that "includes, in association with each item of digital content, a reference to each implementation of said item." Appx84 (15:45-49). In short, the catalog must store the relationship between at least one item and multiple implementations of that item.

That plain-language reading of the claims aligns with the specification's teachings. Opening.Br.28-29. Indeed, the invention would

not work without associating each item with its corresponding implementations; that relationship is essential to the '790 patent's two levels of filtering (first for compatibility and then streamlining to only a single description). Opening.Br.29.

The Board nonetheless read this fundamental requirement out of the patent, concluding instead that a "flat database" like Mehta's—without any stored relationship between items and their implementations—is sufficient. *See* Appx20-22; Opening.Br.29-30. The Board's silence about the "in association with" requirement leaves it unclear how it thought that requirement satisfied. But at best, it found a one-to-one relationship between items and implementations: In the Board's view, each application is an implementation of the item named in its title. If two applications are "functionally equivalent" and have the same title, they are both implementations of the same item—but Mehta's catalog does not record that equivalence or otherwise link the multiple implementations to each other or to the same item. The only relationship is a conceptual one that humans can ascribe to the separately stored implementations. *See* Appx20-26, Appx30-31; Opening.Br.13-17, 32-33.[1]

[1] The Board seemed to map both "items" and "implementations" to Mehta's applications at the same time. *Compare* Appx22 (finding "that Microsoft Word for Windows and Microsoft Word for Apple Mac are different implementations of the same application"); *with* Appx23-26 (accepting Netflix's mapping of "implementations" to Mehta's applications and "a reference to each implementation" to each application's URL), *and* Appx30-31 (appearing to map "implementations" to applications and "items" to their titles). This mashup was a result of

None of Netflix's arguments can square the Board's view with the claims' plain language.

**1.** Like the Board, Netflix focuses on the fiction that VideoLabs is importing limitations from the specification. Netflix.Br.42-46. And like the Board, Netflix mistakes illustration for importation.

That is the predictable result of skipping the first step of claim construction: "considering the language of the claims themselves," *Grace Instrument Indus., LLC v. Chandler Instruments Co.*, 57 F.4th 1001, 1008 (Fed. Cir. 2023). The Board ignored the text altogether, and Netflix makes it an afterthought. *See* Appx20-22 (no analysis of the claim language), Netflix.Br.40-48 (engaging with the text for the first time 46 pages in, after its primary argument about importation).

Following the Board's lead, Netflix lasers in on the hierarchical relationship illustrated in Figures 5 and 6 of the '790 patent, Appx67-68, insisting that these examples do not narrow the claims. But nobody contends that they do. Rather, as VideoLabs has said all along, those figures simply illustrate what the claims expressly require. Opening.Br.28-29; *see* Appx1993-96, Appx2003-05. To reiterate, the

---

trying to force a square peg into a round hole; Mehta simply does not share the '790 patent's core distinction between items and implementations. Opening.Br.15 (citing Appx2001-03, Appx2005). But regardless how exactly the Board's mapping worked, it is missing the required one-to-many relationship; either there are one-to-one relationships between each application (implementation) and its title (item), or each application is both one implementation and one item at the same time. For simplicity, VideoLabs will refer to both scenarios as involving a one-to-one relationship.

claims distinguish between items and their implementations, call for at least one item of content with more than one implementation, and require a stored one-to-many relationship between each item and its implementations (“**in association with each item** of digital content, **a reference to each implementation** of said item”). Appx84 (15:34-49) (emphasis added). That is what is on display in Figures 5 and 6. Appx67-68.

Netflix takes particular umbrage at the word “hierarchical,” *see* Netflix.Br.45-46, but that gets it nowhere. For starters, neither Netflix nor the Board explains how a digital catalog could store multiple implementations “in association with” a single item without some sort of logical hierarchy between the item and its implementations. *See* Appx20-22; Netflix.Br.40-48. Indeed, it is the absence of that relationship that led the Board to call Mehta’s database “flat.” Appx21 (quoting Appx2336 (48:12-20)); *see* Appx2333 (45:3-21), Appx2336 (48:12-20) (Dr. Goodrich characterizing Mehta’s database as “flat” because it lists functionally equivalent programs “as different applications,” rather than “cluster[ing]” them “in terms of implementations”).[2]

[2] Netflix suggests in passing that the Board found that Mehta’s “flat database” stores multiple implementations “as separate, associated entries.” Netflix.Br.48-49 (citing Appx17-22). That is false. The Board did not find that Mehta’s separate entries for implementations are “associated” in any way. Appx17-22. Nor did Netflix make any such argument. Appx86-164 (petition); Appx2253-86 (reply).

Regardless, VideoLabs' position does not rise or fall with the word "hierarchical." However one visualizes the stored relationship, it is undisputed that Mehta does not store any relationship between an item and multiple implementations of that item. The need for the download manager to store such a relationship—and its critical role in the '790 patent's two levels of filtering—is the key point the specification reinforces. Appx80-83 (7:31-45, 9:37-62, 12:39-13:35); *see* Appx65-68 (figs.3-6). Whether to call that relationship "hierarchical" or something else is beside the point.

Netflix's remaining complaints about VideoLabs' use of the specification are weaker still. Looking to the specification to help confirm a plain-English reading of the claim language is fair game; nothing limits its utility to establishing lexicography or disavowal, *contra* Netflix.Br.43-46. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (en banc) ("[C]laims must be read in view of the specification, of which they are a part." (cleaned up)); *In re Varma*, 816 F.3d 1353, 1360 (Fed. Cir. 2016) (finding that a specification "reinforce[d] the distinctions that [were] clear in the claim language").

Nor is the figures' use of "product entry" instead of "item of digital content" a reason to ignore them. *Contra* Netflix.Br.42. The specification could hardly be clearer that the terms are equivalent. Appx81 (9:37-66) ("The product catalog contains descriptions of all published items of content (products). Referring to Fig. 6, the catalog includes, for each

product entry, a reference to at least one implementation of that product." (reference numbers omitted)).

If anyone is misusing the specification, it is Netflix. Netflix suggests that because the specification says that any given product entry "can"—not "must"—include references to multiple implementations, there must not be a requirement that the catalog associate any item with multiple implementations. Netflix.Br.44. Even if that were what the specification meant by "can," the claim language expressly says otherwise: The server system must store "a plurality of different implementations of *at least one* of the items of content." Appx84 (15:40-42). And the product catalog must "include, in association with each item of digital content, a reference to each implementation of said item of digital content." Appx84 (15:45-49). Anyhow, Netflix misreads the specification. In context, "can" refers to a capability of the catalog, not an optional feature. The immediately preceding sentence explains that "any particular product may have multiple implementations published on the download manager." Appx81 (9:45-48). "**Hence**, any particular product entry in the catalog 54 can include references to multiple implementations of the product." Appx81 (9:49-51) (emphasis added). "Can" reflects the understanding that not all items necessarily have multiple implementations—but for those that do, the catalog "include[s], in association with [the] item … , a reference to each implementation." Appx84 (15:40-49).

**2.** When Netflix finally gets around to the claim language, its case does not improve. First, Netflix complains that "VideoLabs wrongly excerpts the claim" by discussing "implementations" rather than "a reference to each implementation." Netflix.Br.46. In reality, VideoLabs repeatedly discussed the "reference" language. Opening.Br.27-28. Regardless, that is a distinction without a difference. The Board did not rely on it. *See* Appx20-26. Neither did Netflix. Appx2267-69. Even now, Netflix does not identify any practical difference. *See* Netflix.Br.46. That is because there is none. Associating a reference to an implementation with an item would, at least given the arguments made here, associate the implementation with the item. Which leaves Netflix right where it started: Mehta does not associate multiple references to implementations with an item any more than it associates multiple implementations.

Netflix's remaining arguments—that Mehta stores a URL for each implementation that is "mapped to" an item and that "each implementation belongs to a particular item of content," Netflix.Br.46-48—are no help either. Those one-to-one relationships are no substitute for the claimed one-to-many relationship. *See* Appx25 (Board finding that Mehta discloses a single URL for each application); *supra* pp.3-5.

### B. Because the Board's error is dispositive, there is no basis for a remand.

The Board's claim construction error is dispositive. Its anticipation and obviousness findings both depend on it. Opening.Br.32-35. And its finding that Mehta uses a flat database with (at best) one-to-one relationships between items and implementations confirms that Mehta does not disclose the one-to-many association required under the correct construction. *Supra* pp.3-5. Netflix does not dispute the point. *See* Netflix.Br.48-51 (arguing only that the Board's findings are supported under its construction).[3]

Nevertheless, Netflix argues that remand, not reversal, would be the appropriate remedy. Netflix.Br.51-52. But Netflix offers no viable justification for a remand; it relies only on its view of what "regularly" happens. *Id.*

That remands are appropriate in many cases does not make a remand appropriate in this one. Often when the Board's analysis is "infected by [an] erroneous claim construction," a remand is needed to resolve an open question of fact under the correct construction. *Kaken Pharm. Co. v. Iancu*, 952 F.3d 1346, 1355 (Fed. Cir. 2020). But when "no further factual

[3] Although the Board's factfinding is not in question here, Netflix's and the Board's repeated assertions that Dr. Goodrich contradicted himself, *see* Netflix.Br.48-49 & n.6, reflect their misunderstanding of the claims. Dr. Goodrich's consistent view was that different versions of Microsoft Word could be considered different implementations of the same product—but that Mehta's product catalog would not store that relationship; "it would list them as separate applications" instead. Appx2331 (42:2-48:20).

findings are required" under the correct construction, reversal is the answer. *In re Hodges*, 882 F.3d 1107, 1113-14 & n.7 (Fed. Cir. 2018); *accord Apple Inc. v. Gesture Tech. Partners*, 127 F.4th 364, 373 (Fed. Cir. 2025); *In re Smith Int'l, Inc.*, 871 F.3d 1375, 1383-84 (Fed. Cir. 2017).

Netflix's brief confirms that there would be nothing for the Board to do on remand. Netflix does not argue that it would win under VideoLabs' construction, let alone identify where in the record it preserved any such theory. *See* Netflix.Br.51-52. That is because it did not. To the contrary, it is undisputed that Mehta's database is flat—and that what makes it flat is the absence of the one-to-many item-to-implementations relationships that VideoLabs contends are required. With that undisputed factual finding in place, the only "permissible factual finding" left is that Mehta does not satisfy this claim requirement. *Apple*, 127 F.4th at 373 (attribution omitted). That makes reversal appropriate. *Id.*

## II. The Board Erred as a Matter of Law by Failing to Enforce the "Only a Single Description" Limitation.

Separately, the Board's conclusion that Mehta discloses the "only a single description" limitation rests on two distinct legal errors: its decision to allow Netflix to address this limitation for the first time in its reply, *see* Opening.Br.36-43, and its implicit construction that incorrectly read this limitation out of the patent, *see* Opening.Br.43-49. Netflix has no workable answer to either error.

### A. Netflix's reply cannot cure its failure to address the "only a single description" limitation in its petition.

By choosing to initiate this proceeding, Netflix took on a statutory obligation to submit a petition "identif[ying], in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim" when it submitted its petition. 35 U.S.C. §312(a)(3). That meant Netflix's petition needed to "specify where each element of the claim is found in the prior art … relied upon." 37 C.F.R. §42.104(b)(4). "[M]ere conclusory statements" cannot satisfy those requirements. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016). And it "is of the utmost importance that petitioners … adhere to" them. *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016).

**1.** Netflix's petition did not clear that initial hurdle. Opening.Br.36-43. Although Netflix explained why it thought Mehta disclosed the beginning of the "presenting" step ("presenting the selected portion of the product catalog to the subscriber via a wireless network," Appx84 (15:56-57)), it stopped there. Appx127-29. The step separately requires "provid[ing] **only a single description of each item** of digital content in [the selected] portion, **regardless of the number of implementations** of each said item." Appx84 (15:57-61) (emphasis added). Netflix's petition made no argument whatsoever that Mehta provides "only a single description of each item." Appx127-29. If

anything, Netflix suggested that users would see descriptions for however many implementations were compatible with their devices, asserting that Mehta provides "only a portion of the list of applications, corresponding to the **versions** that will work for the subscriber and regardless of the number of application versions," Appx129 (emphasis added). And tellingly, this was the only limitation of claim 2 for which Netflix turned to its secondary reference, Schläpfer, in its obviousness theory—where it again made no argument that Mehta provides only a single description. *See* Appx142-44.

Only after VideoLabs' response timely argued that Netflix's failure to address this limitation warranted rejecting its challenge to the patent, Appx2009-10, did Netflix attempt to put a theory together. *Compare* Appx2269-72 (Netflix's reply arguing that Mehta's Figures 2 and 11F are examples in which "only a single description" appears for each implementation), *with* Appx128-29 (Netflix's petition neither citing these figures nor using the words "single" or "description"). But as VideoLabs observed in its sur-reply, that was too little, too late. Appx2434-35. Indeed, even in its reply, Netflix neglected to address the "regardless" clause; its new figure-based argument was silent as to how Mehta would respond to multiple implementations. Appx2269-72.

The Board acknowledged but neglected to adjudicate this dispute. Opening.Br.39-41. That is a straightforward APA violation, *id.*, and

Netflix makes no attempt to argue otherwise, Netflix.Br.57-62 (mentioning the issue in a heading but making no argument about it).

On appeal, Netflix claims that its petition addressed not just the "only a single description" limitation but also Figures 2 and 11F in particular. Netflix.Br.57-59. Not true. First, Netflix calls the same silence discussed above "expressly address[ing] th[e] limitation." Netflix.Br.58 (citing Appx127-29). It is still not there. Appx127-29.

Next, unable to find Figure 11F in its petition, Netflix says it "cited paragraph 117 of Mehta, which discusses Figure 11F." Netflix.Br.58. True, that paragraph's (unrelated) first sentence mentions "Figs. 11E-11H." Appx336 ¶117. But a figure included in a range cited for a different point in a paragraph cited for a still different point is a far cry from a written explanation identifying, "with particularity," the basis for Netflix's view that Mehta discloses the "only a single description" limitation. *See* 35 U.S.C. §312(a)(3); 37 C.F.R. §42.104(b)(4).

So Netflix tries another citation, arguing for the first time on appeal that the missing argument can be found in its expert's declaration. Netflix.Br.59-60; *see* Appx129 (citing Appx227 ¶77); *see* Appx2269-72 (argument absent from Netflix's reply). Fair enough, Mr. Wechselberger's declaration asserts without explanation that "a POSITA would have understood" from Mehta's paragraph 117 "that [Mehta] provides the subscriber with only a single subscriber-appropriate version that will work for the subscriber, so that the

subscriber can 'avoid the problem of having to explicitly select a compatible application.'" Appx227 ¶77 (quoting Appx336 ¶117). That is no excuse for the petition's silence. For one, the Board prohibits incorporation by reference. 37 C.F.R. §42.6(a)(3); *see also id.* §42.104(b)(5) (requiring petitioners to explain "the relevance of the[ir] evidence to the challenge raised"). Netflix was free to cite the declaration, but it still needed to "explain[] the significance of the [cited] material" in its petition. *Parus Holdings v. Google LLC*, 70 F.4th 1365, 1372 (Fed. Cir. 2023); *accord 3M Co. v. Evergreen Adhesives, Inc.*, 860 F. App'x 724, 726 (Fed. Cir. 2021) (cannot support a position "entirely by reference to" expert testimony without "ma[king] the relevant contention or argument" in the brief (cleaned up)). And even if it had made it into the petition, Mr. Wechselberger's "conclusory statement[] cannot satisfy" Netflix's burden to prove unpatentability. *Magnum Oil*, 829 F.3d at 1380. That is all the more so given his failure to address the "regardless" clause. Appx227 ¶77.

**2.** Finding no help in its petition, Netflix sets off in search of a more favorable legal standard. Nothing it comes back with can overcome the reality that its defective petition is fatal. *See Magnum Oil*, 829 F.3d at 1377-81.

**a.** First, Netflix contends that short of advancing "an entirely new theory of prima facie obviousness," it was free to make any new arguments it wanted, so long as they were responsive. Netflix.Br.58-59

(quoting *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1008 (Fed. Cir. 2023)). Netflix does not say whether it thinks a new theory of anticipation would be fair game. But it sets the bar nearly as low, arguing that it complied with the rule merely by "advancing the same grounds and the same prior art references." Netflix.Br.58. By that logic, a petitioner could identify the reference, say whether its challenge is anticipation or obviousness, assert without explanation that all the limitations are disclosed, and then have free rein on reply.

That is not the law. Petitioners cannot "raise[] a new theory or argument," responsive or not. *Corephotonics*, 84 F.4th at 1008. And because that "newness restriction stems from the statutory mandate that the petition govern the IPR proceeding," this Court's review is de novo. *Id.* Addressing a limitation for the first time in reply, as Netflix did here, is making a new argument—not "simply expand[ing] on previously raised arguments" or introducing new evidence. *Id.* (attribution omitted); *accord Magnum Oil*, 829 F.3d at 1380-81 (Board cannot "adopt arguments on behalf of petitioners"); *cf. Rembrandt Diagnostics, LP v. Alere, Inc.*, 76 F.4th 1376, 1385 (Fed. Cir. 2023) (allowing a party to cite additional evidence in support of "the same legal ground based on the same prior art references and the **same legal argument**" (cleaned up; emphasis added)); *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 706 (Fed. Cir. 2020) ("same algorithm from the same prior art reference to support the same legal argument") (discussed at Netflix.Br.61). There

was nothing in Netflix's petition about the "only a single description" limitation for the reply to expand on.

**b.** As a result, it is irrelevant whether Figures 2 and 11F would have been allowable reply evidence or impermissible "previously unidentified portions of a prior-art reference" used "to make a meaningfully distinct contention." *See Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1367 (Fed. Cir. 2015) (petitioner could not pivot from "a generic statement in" a prior art reference to "specific embodiments of" that reference first identified on reply). There is no preexisting argument to measure Netflix's new evidence against.

**c.** Netflix's insistence that its reply arguments were responsive is equally irrelevant. *Contra* Netflix.Br.59-62. Again, the question is whether Netflix's petition passed muster, not whether its reply was responsive. Responsiveness is the bare minimum for reply arguments—not a cure for newness. *Corephotonics*, 84 F.4th at 1008. Patent owners would otherwise be forced to choose between insisting that petitioners comply with their statutory obligations and defending their patents on the merits. The statute imposes no such choice. Instead, it puts the burden squarely on the petitioner, as the party seeking to extinguish a property right, to meet the procedural and substantive requirements for its requested government intervention.

### B. On the merits, the Board erred by reading the "only a single description" limitation out of the patent.

The merits dispute is narrow. The parties agree that the Board's anticipation finding turned on a claim construction question: Whether the mere happenstance of only ever having a single compatible implementation—and therefore presenting just one description—satisfies the claims' requirement to present "only a single description of each item … , regardless of the number of implementations of each said item," Appx84 (15:56-61). *See* Netflix.Br.53-57; Opening.Br.43-49; Appx29-30. Because the Board answered that legal question incorrectly, this Court should reverse. None of Netflix's arguments demonstrates otherwise.

**1.** First, Netflix argues that a system like Mehta's that only ever contemplates a single implementation per item "falls squarely within the scope of the invention." Netflix.Br.53. That misunderstands the limitation.

The "only a single description" limitation does not merely require presenting the compatible implementations to the subscriber such that there is only a single description per item of content; they require doing so "**regardless of the number of implementations of each said item**." Appx84 (15:56-61) (emphasis added); *see* Opening.Br.43-46. The Board and Netflix's claim interpretation ignores this final clause.

To satisfy the "regardless" clause, a system would need to present only a single description of each item no matter how many compatible

implementations are available. The Board's finding that Mehta presents only one description per item when there is only one compatible implementation is thus insufficient to support the Board's conclusion that the limitation is met. To account for the true scope of the claim, the Board would also need to find that Mehta presents a single description even for applications with multiple compatible implementations. But given Netflix's position and the Board's finding that Mehta never has multiple compatible implementations, the Board made no such finding. *See* Appx29-30. Nor could it have; it is undisputed that Mehta is silent as to what to do in that situation. *See* Opening.Br.13-14, 49; Netflix.Br.52-57. The Board's finding that Mehta meets the "only a single description" limitation, including its "regardless" clause, is therefore contrary to law.

Put another way, the '790 patent's claims all require an affirmative step of ensuring that only a single description for each item of content is presented, regardless of the number of compatible implementations. Without that affirmative act, representative claim 2's method would not necessarily result in presenting just a single description even when there are multiple compatible implementations, as the claim expressly requires. Appx84 (15:56-61). By incorrectly considering only the result of the step, and not whether the step's requirements were followed to get there, Netflix's contrary construction gives no effect to the "regardless" clause.

The system claims reinforce this conclusion. Representative claim 9 requires "code which, when executed by the processor, causes the processing system to" perform a series of steps, including "**cause the selected portion** of the product catalog **to be presented** to the subscriber" such that it "provides only a single description of each item of digital content in said portion, **regardless of the number of implementations of each said item**." Appx85 (17:1-32) (emphasis added). Just as claim 2 requires an affirmative act of ensuring that only a single description is presented for each item as part of the "presenting" step, claim 9 requires code that performs the same act.

Netflix, for its part, offers no explanation of what the "regardless" clause means under its interpretation. Netflix instead notes that the claims only require multiple implementations, not multiple compatible implementations, and then concludes without explanation that systems that only ever have a single compatible implementation (such as Mehta) satisfy the full "presenting" limitation. Netflix.Br.52-57. Netflix also cites inapplicable law about how prior art need not describe all possible embodiments of the claims and how it is improper to import embodiments from the specification into the claims. Netflix.Br.53-55. None of that is responsive to VideoLabs' point, which is that the claims' plain language requires an affirmative step—ensuring that only a single description is presented regardless of the number of compatible implementations—that Mehta undisputedly does not disclose.

To be clear, VideoLabs is not saying that a system must always have multiple compatible implementations to meet the "presenting" step of the claims. Rather, it must include an act that filters out any additional compatible implementations as part of the presenting step (or, for the system claims, code that can perform that act).

The Board failed to account for this claim requirement, and Netflix has never contended that Mehta meets it. For good reason: Mehta does not teach anything even close. After all, the Board found that Mehta does not even contemplate the possibility of multiple compatible implementations—in its world, only a single implementation can ever correspond to a given device. Appx29-30. So it is no surprise that Mehta fails to teach a solution to a problem it does not recognize.

**2.** To be sure, "a prior art product that sometimes, but not always, embodies a claimed method nonetheless teaches that aspect of the invention." *Hewlett-Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1325-26 (Fed. Cir. 2003) (affirming a jury's finding that a device satisfied a method step where it "could be," and in its default setting would be, "operated in a manner that fell within the scope of the claims," even though it might not always be operated that way). But that principle is no use to Netflix here. *Contra* Netflix.Br.57. Although Mehta might sometimes reach a comparable result—showing just one description per item—it never embodies the claimed method for getting there because it does not take any affirmative step to ensure that it presents "only a single

description, regardless of the number of implementations." Mehta discloses no method for addressing multiple compatible implementations, and so it would neither act to prevent multiple descriptions for the same item of content nor have code capable of doing so.

### C. Netflix's backup obviousness theory is beyond repair.

Netflix does not dispute that the Board's obviousness analysis for the "only a single description" limitation repeatedly relied on and thus was tainted by its anticipation finding. *See* Opening.Br.49-50 (making this argument); Netflix.Br.62-65 (no response). Nor does it dispute that at a minimum, the Board must try again. *See* Opening.Br.49-50; Netflix.Br.62-65.

That leaves the question whether Netflix's and the Board's obviousness theory was insufficient as a matter of law, eliminating the need for a remand. Opening.Br.50-54. Netflix's defenses of that theory fall far short, confirming that reversal is warranted.

**1.** The fundamental problem with Netflix's theory is its failure to identify any source of the missing limitation—the "only a single description" limitation. Opening.Br.50-52. It cannot be in Mehta (or there would be no need to reach obviousness). Netflix admits that it is not in Schläpfer. Netflix.Br.63 (asserting that Schläpfer's failure to disclose "providing only a single description" is irrelevant). And Netflix does not identify any evidence that it is "within the common knowledge

of those skilled in the art." *K/S Himpp v. Hear–Wear Techs., LLC*, 751 F.3d 1362, 1365-66 (Fed. Cir. 2014).

The best Netflix can come up with is that Schläpfer's revelation that screen space is limited would "motivate[]" or "guide" an ordinarily skilled artisan "to avoid providing duplicative descriptions of the same 'item of digital content.'" Netflix.Br.63. Why that particular solution? Netflix does not say. *Id.* What evidence supports that conclusion? None, really. *See id.* (citing Appx144, in turn citing Appx242-43 ¶¶107-08); Appx242 ¶107 (Mr. Wechselberger speculating that a person of ordinary skill would have "show[ed] only (or at least at first) HDTV programming descriptions" rather than SDTV or avoided showing "a plurality of different viewing capabilities," without explaining how or why anyone would modify Mehta to do that, let alone to ensure that only a single description per item is ever provided); Appx243 ¶108 (merely repeating Netflix's conclusion). Netflix's dearth of evidence and explanation is insufficient as a matter of law. *See, e.g.*, *K/S Himpp*, 751 F.3d at 1365-66; Opening Br.51-52 (collecting cases requiring record support).

What's more, Netflix's theory makes no sense. It is in direct conflict with the Board's finding—with which Netflix agrees—that Mehta does not recognize the possibility of multiple implementations for a single item of content. Appx29-30. Mr. Wechselberger's examples all assume multiple compatible implementations, Appx242 ¶107, contrary to his own view of Mehta, Appx227 ¶77. Without multiple compatible

implementations to potentially present to a user in Mehta, why would anyone modify it to streamline the presentation of those options? Opening.Br.54. Why modify Mehta to solve a problem that, by Mehta's own terms, is not present? Netflix has no answer.

Netflix's cases are not to the contrary. Of course "express disclosures are not required" for obviousness. *Apple Inc. v. Gesture Tech. Partners*, 129 F.4th 1367, 1378 (Fed. Cir. 2025) (affirming the Board's findings based on specific teachings in specific prior art references). The problem is Netflix's failure to map its missing limitation to anything, express or otherwise. Similarly, that the analysis can consider "suggestions beyond the [references'] literal teachings" and "motivations from the store of common knowledge of one of ordinary skill in the art" is no excuse for replacing concrete evidence with speculation and "vague" ideas. *See Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361-64 (Fed. Cir. 2011) (holding, after a rigorous analysis of the record, that a particular solution was not obvious to try). Finally, *Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324 (Fed. Cir. 2009), reiterates that appealing to "common sense" requires "sufficient reasoning," *id.* at 1328—and does not contradict cases requiring extra caution when common sense is used "to supply a missing claim limitation." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361-63 (Fed. Cir. 2016) (describing *Perfect Web*'s facts as "the exception, rather than the rule").

**2.** Next, Netflix tries to rehabilitate the Board's jump from the existence of at least three broad solutions to the conclusion that there are only three total ways "to accomplish limiting the amount of information shown on a small screen," Appx46. *See* Netflix.Br.64-65. Netflix's argument would turn the holding in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), on its head. *KSR* did not hold that a patent owner must prove the possibility of infinite solutions to avoid an obviousness finding; instead, it held that a factfinder must conclude that only "a finite number of identified, predictable solutions" exist to use that route to obviousness. *Id.* at 421. Netflix did not even attempt to make that showing. *See* Appx142-44; Appx2277-79.

For that matter, the notion that VideoLabs "cannot identify more than two" alternatives distorts the record beyond recognition. VideoLabs' examples are not specific, concrete solutions, but rather two broad categories of solutions, each of which could be carried out in innumerable ways: (i) displaying less information and (ii) only displaying the most important applications. Appx2089-90 ¶105. Displaying less information might involve shortening the text related to applications, implementations, or other content displayed to the subscriber; removing images or reducing their size; having scrollable content; and so on. And any number of algorithms could be used to select the most important applications. Moreover, these changes could be implemented in myriad, unspecified ways. Nothing in the record provides their details or

establishes their limits, and so neither logic nor record evidence supports the Board's assertion that there are "a finite number of identified, predictable solutions." Appx46 (quoting *KSR*, 550 U.S. at 421).

Netflix's quibbling over how the problem is framed—it prefers "how to provide information about applications available for download given the problem of a small screen"—makes zero difference. *Contra* Netflix.Br.64. Netflix still has no argument and no evidence on the *KSR* point, and it still cannot narrow down the universe of potential solutions one whit.

In the end, Netflix's handwaving cannot carry its burden as a matter of law, and so this Court should reverse.

## III. The Record Refutes Netflix's Last-Ditch Forfeiture Arguments.

It is no accident that Netflix relegates its smattering of forfeiture arguments to the back of its brief despite contending that not a single argument is properly before this Court. Netflix.Br.65-70. VideoLabs has argued for the same claim scope throughout this proceeding and has every right to clarify, elaborate on, refine, and defend its position on appeal. *See, e.g.*, *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346-47 (Fed. Cir. 2001) (a party may "clarify[] or defend[] the original scope of its claim construction" on appeal, including by "supporting it[]" with new citations); *Intertainer, Inc. v. Hulu, LLC*, 600 F. App'x 943, 947-48 (Fed. Cir. 2016) (no forfeiture where a party refined

its arguments on appeal in light of the Board's decision). And it preserved its challenge to Netflix's petition at every turn, too.

**1.** First, Netflix says that VideoLabs forfeited its argument about the required relationship between items and implementations, or at least certain points. Netflix.Br.66-68; *see* Netflix.Br.66 (complaining about a specific superfluity argument). Netflix is wrong.

VideoLabs' position has always been that the claims' plain meaning compels a distinction between items and their implementations, requires at least one item of content to have multiple implementations, and requires the product catalog to store a one-to-many relationship between each item and its implementations. *See, e.g.*, Appx1982 (Mehta is missing "the hierarchical division of content and its implementations"; "the '790 patent's mechanisms for managing the relationships between 'application[s]' and 'implementations,' such as 'references' to each implementation and only presenting a single description per application"); Appx1984, Appx1987 (importance of stored relationships); Appx1993 (using Figure 6 to illustrate the point); Appx2003-04 (same with Figure 5); *see also* Appx13-22 (Board summarizing and adjudicating the issue). *See generally* Appx1992-2009. Given VideoLabs' view that, as a factual matter, Mehta did not distinguish between items and their implementations at all, let alone store the required relationships, Appx2005, the dispute over this requirement understandably played out across several claim terms.

Take Netflix's own word for it. In between its Netflix's rhetoric about "shifted" positions and an "about-face," Netflix also complains about VideoLabs "repackag[ing]" the arguments it raised below—all in the span of three paragraphs. Netflix.Br.42-43.

True enough, the focus of the dispute has evolved along with this proceeding—as claim construction disputes often do. But VideoLabs' position as to the claim scope has been consistent, was presented to and decided by the Board, and is preserved. *See, e.g.*, *Bio–Rad Labs., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1333 (Fed. Cir. 2021) (no forfeiture where a party was "presenting the exact same claim construction theory that it advanced throughout the entirety of the" proceedings below).

**2.** Second, Netflix asserts that VideoLabs cannot make its "only a single description" argument because it did not use the words "multiple compatible implementations" below. Netflix.Br.68. But the standard is whether VideoLabs' position is the same, not whether it is repeating itself verbatim. VideoLabs made exactly the same argument to the Board. *See* Appx2009-12; Appx2434-35 (emphasizing Netflix's failure to account for the "regardless" clause); *see* Appx27-28 (Board acknowledging the argument).

**3.** Next up is Netflix's contention that VideoLabs cannot challenge its reply "evidence and argument" as to "only a single description" because VideoLabs did not "move[] to strike or otherwise challenge[] the timeliness of this evidence below." Netflix.Br.69. Netflix again misses

the point. The problem is with its petition. *Supra* pp.13-16; Opening.Br.36-43. VideoLabs challenged Netflix's defective petition in its response, Appx2009-10, and then reiterated that point in its sur-reply while rebutting Netflix's attempt to explain it away, Appx2434-35. The Board acknowledged the dispute. Appx27-28. The scope of Netflix's reply arguments is hardly the point; they cannot cure its defective petition. *Supra* pp.16-18. Regardless, Netflix identifies no support for its imagined motion-to-strike requirement. *See Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1381 (Fed. Cir. 2009) (applying Sixth Circuit law to evidentiary objections at trial); *Supercell Oy v. GREE, Inc.*, 2021 WL 4452082, at *3 (Fed. Cir. Sept. 29, 2021) (no discussion of motions to strike).

**4.** Finally, Netflix says that VideoLabs cannot challenge the Board's institution decision. Netflix.Br.70. Of course it cannot—which is why it is not. The well-established consequence of Netflix's failure to address the "only a single description" limitation in its petition is that Netflix loses on the merits. *See, e.g.*, *Magnum Oil*, 829 F.3d at 1381 (reversing on the merits).

## CONCLUSION

This Court should reverse the Board's decision.

Respectfully submitted,

*/s/ Jaime F. Cardenas-Navia*

Jaime F. Cardenas-Navia
Michael Matulewicz-Crowley
Nathaniel G. Warner
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
(212) 381-1965
jcardenas-navia@reichmanjorgensen.com

Christine E. Lehman
Naveed Hasan
Brian C. Baran
Savannah H. Carnes
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
1909 K Street NW, Suite 800
Washington, DC 20006
(202) 894-7310
clehman@reichmanjorgensen.com

*Counsel for Appellant VideoLabs, Inc.*

June 6, 2025

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-1131

**Short Case Caption:** VideoLabs, Inc. v. Netflix, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6871 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 06/06/2025

Signature: /s/ Jaime F. Cardenas-Navia

Name: Jaime F. Cardenas-Navia